Docket No. 11-56969

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

HAROLD HOLMES, an individual, on his own behalf
and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

v.

NCO FINANCIAL SYSTEMS, INC., a Pennsylvania corporation,

*Defendant-Appellee.*

*Appeal from the United States District Court*
*for the Southern District of California*
*No. 10cv2543-H (RBB)*
*The Honorable Marilyn L. Huff*

## BRIEF OF APPELLANT

DAVID C. PARISI, ESQ.
SUZANNE HAVENS BECKMAN, ESQ.
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 Telephone
(818) 501-7852 Facsimile

ETHAN PRESTON, ESQ.
PRESTON LAW OFFICES
21001 North Tatum Boulevard
Suite 1630-430
Phoenix, Arizona 85050
(480) 269-9540 Telephone
(866) 509-1197 Facsimile

*Attorneys for Plaintiff-Appellant, Harold Holmes*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION.................................................................1

I.    THE DISTRICT COURT HAD SUBJECT MATTER
      JURISDICTION ..................................................................................1

II.   THIS COURT HAS JURISDICTION OVER THIS APPEAL .....................1

STATEMENT OF THE ISSUES...................................................................2

SUMMARY OF THE CASE ........................................................................2

SUMMARY OF FACTS ..............................................................................4

I.    AT&T'S DEBT COLLECTION SYSTEM AND OASIS ............................4

II.   NCO REPORTED HOLMES'S DISPUTED ACCOUNT AS
      UNDISPUTED ....................................................................................4

III.  THE OASIS INTERFACE ....................................................................5

IV.   NCO'S INTERACTIONS WITH OASIS ................................................6

SUMMARY OF ARGUMENT ....................................................................7

ARGUMENT ...........................................................................................10

I.    THE COURT SHOULD REVERSE THE DISTRICT COURT
      BECAUSE IT ERRED IN GRANTING SUMMARY JUDGMENT ..........10

      A.    This Court Reviews the District Court's Decision De Novo .............10

      B.    The District Court Erred Granting Summary Judgment Because
            a Reasonable Finder of Fact Could Find in Favor of Holmes ............10

            1.    NCO's Constructive Knowledge Is a Material Issue of
                  Fact.......................................................................................12

            2.    Under a Constructive Knowledge Standard, NCO Had an
                  Affirmative Duty to Perform a Reasonable Investigation .......13

            3.    The Standard for Summary Judgment on Constructive
                  Knowledge Is Very High .........................................................15

II.   ON THE BASIS OF THE RECORD BELOW, A REASONABLE
      TRIER OF FACT WOULD FIND THAT NCO'S INVESTIGATION
      WAS UNREASONABLE ......................................................................17

| | | | |
|---|---|---|---|
| | A. | NCO's Predecessors Stored Consumer Disputes in OASIS's Dispute Tab | 18 |
| | B. | The OASIS Manual Put NCO on Notice of the Consumer Disputes in its Predecessors' Dispute Tabs | 19 |
| | C. | A Reasonable Debt Collector Would Have Reviewed its Predecessors' Dispute Tabs Before Reporting AT&T's Accounts to CRAs | 20 |
| | D. | NCO Had No Reasonable Basis to Assume That AT&T Did Not Assign It Disputed Debts | 22 |
| | E. | NCO Did Not Review Its Predecessors' Dispute Tabs | 25 |
| | F. | The Fact that NCO Did Not Have Complete Access to OASIS Is Immaterial | 27 |
| III. | | HOLMES SHOULD HAVE RECEIVED TIME FOR MORE DISCOVERY | 30 |
| IV. | | THIS COURT SHOULD REASSIGN THIS CASE ON REMAND | 32 |
| V. | | CONCLUSION | 33 |

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*A&M Records, Inc. v. Napster, Inc.*
  239 F.3d 1004 (9th Cir. 2001) ............................................................13

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)...................................................10, 11, 12, 15

*Armstrong v. United States*
  No. 07-3793, 2008 WL 5047680 (N.D. Cal. Nov. 24, 2008)............................26

*Bias v. Moynihan*
  508 F.3d 1212 (9th Cir. 2007) ............................................................31

*Braxton-Secret v. A.H. Robins Co.*
  769 F.2d 528 (9th Cir. 1985) .............................................................16

*Clark v. Capital Credit & Collection Services, Inc.*
  460 F.3d 1162 (9th Cir. 2006) ......................................................14, 15

*Daley v. A & S Collection Assocs., Inc.*
  717 F. Supp. 2d 1150 (D. Or. 2010) ....................................................12

*Earp v. Cullen*
  623 F.3d 1065 (9th Cir. 2010) .....................................................32, 33

*Exxon Co., U.S.A. v. Sofec, Inc.*
  517 U.S. 830 (1996)......................................................................28

*FTC v. Publ'g Clearing House, Inc.*
  104 F.3d 1168 (9th Cir.1997) ...........................................................23

*FTC v. Stefanchik*
  559 F.3d 924 (9th Cir. 2009) ............................................................10

*Gorman v. Wolpoff & Abramson, LLP*
  584 F.3d 1147 (9th Cir. 2009) ..........................................................12

*Gostony v. Diem Corp.*
  320 F. Supp. 2d 932 (D. Ariz. 2003) ...................................................12

*Herman & MacLean v. Huddleston*
    459 U.S. 375 (1983) ........................................................................16

*Hughes v. United States*
    953 F.2d 531 (9th Cir. 1992) ........................................................31

*Imax Corp. v. Cinema Techs., Inc.*
    152 F.3d 1161 (9th Cir. 1998) ......................................................24

*In re Caneva*
    550 F.3d 755 (9th Cir. 2008) ........................................................23

*In re Cirrus Logic Sec. Litig.*
    946 F. Supp. 1446 (N.D. Cal. 1996) .............................................15

*In re Software Toolworks, Inc.*
    50 F.3d 615 (9th Cir. 1994) ...........................................16, 17, 21

*Jones v. Taber*
    648 F.2d 1201 (9th Cir. 1981) ......................................................15

*Lujan v. Nat'l Wildlife Fed.*
    497 U.S. 871 (1990) ......................................................................23

*Margolis v. Ryan*
    140 F.3d 850 (9th Cir. 1998) ........................................................31

*Mendocino Envm'tl Ctr. v. Mendocino County*
    192 F.3d 1283 (9th Cir. 1999) ......................................................11

*Nelson v. Equifax Info. Servs., LLC*
    522 F. Supp. 2d 1222 (C.D. Cal. 2007) ........................................12

*Qualls v. Blue Cross of Cal.*
    22 F.3d 839 (9th Cir.1994) ...........................................................31

*Reeves v. Sanderson Plumbing Prods., Inc.*
    530 U.S. 133 (2000) ......................................................................11

*Reichert v. Nat'l Credit Sys., Inc.*
    531 F.3d 1002 (9th Cir. 2008) ......................................................23

*Rost v. United States*
  803 F.2d 448 (9th Cir. 1986) ..............................................................13

*Scott v. Harris*
  550 U.S. 372 (2007)..........................................................11, 22, 26

*Shenker v. Baltimore & O. R. Co.*
  374 U.S. 1 (1963)................................................................14

*Soremekun v. Thrifty Payless, Inc.*
  509 F.3d 978 (9th Cir. 2007) ..............................................11, 15, 21

*Staub v. Proctor Hosp.*
  131 S.Ct. 1186 (2011)..........................................................13, 28

*Sullivan v. Equifax, Inc.*
  No. 01-4336, 2002 WL 799856 (E.D. Pa. 2002)................................12

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*
  216 F.3d 764 (9th Cir. 2000) ..............................................29

*Thornhill Pub. Co., Inc. v. General Tel. & Elecs. Corp.*
  594 F.2d 730 (9th Cir. 1979) ..............................................24

*TSC Indus. v. Northway, Inc.*
  426 U.S. 438 (1976)..........................................................17

*United States v. Sears, Roebuck & Co., Inc.*
  785 F.2d 777 (9th Cir.1986) ..............................................32

*Universal Health Servs., Inc. v. Thompson*
  363 F.3d 1013 (9th Cir. 2004) ..............................................10

*Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*
  739 F.2d 1434 (9th Cir. 1984) ..............................................15

*White v. Roper*
  901 F.2d 1501 (9th Cir. 1990) ..............................................29, 28

**FEDERAL STATUTES**

15 U.S.C. § 1692e(8) ..........................................................passim

15 U.S.C. § 1692k(c) .......................................................................14, 15

15 U.S.C. § 1692k(d) .................................................................................1

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1367(a) ..................................................................................1

## CALIFORNIA STATUTES

Cal. Civ. Code §§ 1785.1-1785.36 ............................................................1

Cal. Civ. Code § 1785.25(a) ...........................................................passim

## FEDERAL RULES

Fed. R. App. P. 4(a)(1)(A) .........................................................................1

Fed. R. Civ. P. 56 ...............................................................................23, 30

Fed. R. Civ. P. 56(a)................................................................................11

Fed. R. Civ. P. 56(d) ..........................................................................2, 30

## OTHER AUTHORITIES

10B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2730 (3d ed. 2011) ...........................................................16

Circuit Rule 30-1.6...................................................................................3

Restatement (Second) of Torts § 12(2)...................................................14

Restatement (Second) of Torts § 440 ....................................................28

Restatement (Second) of Torts §§ 440–53 ...........................................28

## STATEMENT OF JURISDICTION

## I.    THE DISTRICT COURT HAD SUBJECT MATTER JURISDICTION

Plaintiff-Appellant Harold Holmes ("Holmes") asserts claims against Defendant-Appellee NCO Financial Systems, Inc. ("NCO") under the federal Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. §§ 1692-1692p) and California's Consumer Credit Reporting Agencies Act ("CCRAA") (Cal. Civ. Code, §§ 1785.1-1785.36).

The district court had subject matter jurisdiction over Holmes's FDCPA claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). The district court also had supplemental jurisdiction over Holmes's CCRAA claim under 28 U.S.C. § 1367(a) because it is sufficiently related to the FDCPA claim that it is part of the same case or controversy. (Excerpt of Record ("ER") 267 ¶14.)

## II.    THIS COURT HAS JURISDICTION OVER THIS APPEAL

This Court has jurisdiction over Holmes's appeal of the district court's grant of summary judgment and final judgment against Holmes under 28 U.S.C. § 1291. The district court granted summary judgment against Holmes on November 3, 2011, and entered final judgment on November 4, 2011. (ER 1-7.) Holmes timely filed his notice of appeal on November 8, 2011. (*Cf.* ER 8-12 *with* Fed. R. App. P. 4(a)(1)(A).)

## STATEMENT OF THE ISSUES

1.     Could a reasonable trier of fact have found that NCO breached its duties under 15 U.S.C. § 1692e(8) and California Civil Code § 1785.25(a) by reporting an account on Holmes's credit report as delinquent though NCO never reviewed, nor even attempted to review, the original creditor's records which showed Holmes's dispute of such account?

2.     Could a reasonable trier of fact have found that NCO breached its duties under 15 U.S.C. § 1692e(8) and California Civil Code § 1785.25(a) because it failed to ensure it had access to the original creditors' records of account disputes before reporting the accounts to credit reporting agencies?

3.     Did the district court err by denying Holmes's motion for additional discovery under Federal Rule of Civil Procedure 56(d)?

## SUMMARY OF THE CASE

Holmes disputed the balance on a telephone service account with AT&T Communications of California, Inc. ("AT&T"). AT&T assigned this account to a series of debt collectors, ending with NCO. NCO reported the account on Holmes's credit report as delinquent – without noting that Holmes had disputed the account with AT&T and NCO's predecessors (*i.e.*, the debt collectors who sought

to collect Holmes's account for AT&T before AT&T reassigned the account to NCO).

On December 13, 2010, Holmes filed a complaint against NCO asserting a class claim under the FDCPA and an individual claim under the CCRAA. (ER 264-88.) 15 U.S.C. § 1692e(8) and California Civil Code § 1785.25(a) prohibit reporting incomplete or inaccurate information to credit reporting agencies (such as the failure to report that a debt has been disputed).

On January 25, 2011, NCO filed its answer. (ER 254-63.) On September 20, 2011, NCO filed a motion for summary judgment. (ER 174-249.) On October 24, 2011, Holmes filed his opposition.[1] (ER 44-173.) On October 31, 2011, NCO filed its reply. (ER 13-37.) The district court granted summary judgment on November 3, 2011 and entered final judgment on November 4, 2011. (ER 1-7.)

---

[1]  To facilitate the Court's review, Holmes has organized his Excerpts of Record to reflect the manner in which he originally sought to file his opposition to the motion for summary judgment. *Cf.* Circuit Rule 30-1.6. Because certain materials in his opposition had been designated as confidential, Holmes initially sought to file these portions of his opposition to NCO's motion for summary judgment under seal. (ER 297 at Dkt. Nos. 51, 53.) Although the district court had previously sealed those documents, it denied Holmes's motion to seal his opposition. (*Cf.* ER 297 Dkt. No. 54 *with* ER 296-97 Dkt. Nos. 44-46, 48.) Ultimately, Holmes gave notice to the persons designating the relevant documents as confidential of the district court's ruling on the motion to seal, and then filed those documents in the public record. (*Cf.* ER 38-43 *with* ER 44-73; 87-101; 146-166; 298 Dkt. No. 54.)

3

# SUMMARY OF FACTS

## I.     AT&T'S DEBT COLLECTION SYSTEM AND OASIS

This matter revolves around AT&T's system for collecting accounts and specifically OASIS, the database AT&T uses to coordinate collection on its accounts. AT&T assigns its unpaid service accounts to a series of debt collectors (in AT&T's terminology, outside collection agencies or "OCAs"). (ER 147 ¶3.) AT&T assigns accounts to its OCAs in a designated order (*i.e.*, pre-collection, primary, secondary, and/or tertiary). Thus, the pre-collection OCA works to collect such accounts for a set period of time, when AT&T withdraws the accounts and transfers them to the primary OCA. (ER 147 ¶3.) This process continues until AT&T transfers the remaining accounts to (and then withdraws them from) the tertiary OCA. AT&T uses OASIS to coordinate the OCAs' collection activities and specifically to communicate with different OCAs concerning collection activities with respect to a specific account. (ER 66 ¶5; 89; 147 ¶5.)

## II.     NCO REPORTED HOLMES'S DISPUTED ACCOUNT AS UNDISPUTED

The parties do not contest the following facts: (1) Holmes disputed the AT&T account that was assigned to NCO (ER 268 ¶¶20-21; 269 ¶25; 276; 278; 280-81); (2) one of NCO's predecessors recorded Holmes's dispute in AT&T's database before AT&T assigned the account to NCO on October 21, 2009 (ER 56;

67 ¶7; 79; 114; 147 ¶2; 161; 164; 165); and (3) NCO reported the account to Experian in February 2010, without noting that Holmes had disputed the account (ER 64-65 ¶¶2-3; 75; 78; 80; 285). The only disputed fact in this case is whether or not NCO should have known that Holmes had previously disputed the account.

## III.   THE OASIS INTERFACE

Two portions of the OASIS interface are relevant to this appeal. First, the OASIS interface contains a Dispute Tab. (ER 110-117.) The Dispute Tab contains information about a consumer's dispute with respect to a specific account. (ER 65-66 ¶5; 95.) Thus, an entry in the Dispute Tab provides unambiguous evidence that the account is disputed.

Second, the OASIS interface contains a "Business Type" (or "Account Type") button. Holmes reproduces OASIS's Navigation bar below; the Business Type buttons are on the right-hand side, underneath the date and time:



OCAs use these Business Type buttons to access information that was input into OASIS by the OCA's predecessors with respect to a particular account. (ER 65-66 ¶5; 94; 114-17.) Thus, the Precollect button displays information the Precollect OCA entered into OASIS; the Primary button displays information the Primary

5

OCA entered into OASIS, and so on. (ER 94.) When an OCA reviews a predecessor's notes, the relevant Business Type button is highlighted in the OASIS interface. (ER 110, 112, 114, 116.) However, OASIS does not display such predecessor data without the use of the Business Type button: the Court can compare screenshots of the Secondary OCA's Dispute Tab for the Holmes account (which notes Holmes's dispute) with the Tertiary OCA's Dispute Tab (which is empty). (*Cf*. ER 67 ¶7; 94; 114-17.)

## IV.  NCO'S INTERACTIONS WITH OASIS

NCO admits it received AT&T's manual for the OASIS system before it reported Holmes's account to Experian. (ER 70 ¶14; 136.) The OASIS manual put NCO on notice that other OCAs record disputes in OASIS's Dispute Tabs. (ER 66 ¶5; 95-108.) Further, the OASIS manual put NCO on notice that it needed to use the Business Type buttons in order to see the information inputted by predecessor OCAs. (ER 55; 65-66 ¶5; 90-93.)

AT&T assigned 5,510 disputed accounts to NCO. (ER 23 ¶2; 67-68 ¶8; 120.) Although NCO had received the OASIS manual and OASIS properly displayed the Business Type buttons to NCO (ER 70 ¶11; 130), the weight of the evidence is that *NCO **never attempted** to use the Business Type buttons to access its predecessors' dispute records **until after** Holmes brought suit* (ER 68-71 ¶¶9,

6

11-13; 122; 130; 135-36). As a result, NCO reported at least **1,375** disputed AT&T accounts to credit reporting agencies ("CRAs") without noting that those accounts had been disputed. (ER 23 ¶3.)

NCO produced a declaration averring that, because OASIS had been misconfigured, NCO could not access predecessor data prior to March 14, 2011. (ER 226-227 ¶9.) NCO admits that it did not learn of this access restriction until after it began investigating Holmes's lawsuit. (ER 70 ¶13; 135-36). HOV Services, Inc. ("HOV") administers the OASIS system. (ER 225 ¶5.) HOV restored NCO's access to predecessor OCA notes within six business days after NCO alerted it to the issue. (ER 69 ¶11; 130.)

## SUMMARY OF ARGUMENT

The district court erred when it granted summary judgment against Holmes because a reasonable trier of fact could find that NCO should have discovered that Holmes disputed the account which NCO reported to Experian. Holmes's claims under 15 U.S.C. § 1692e(8) and Civil Code § 1785.25(a) require constructive knowledge, *i.e.*, they depend on what NCO "should have" known. (ER 5.) The constructive knowledge standard is equivalent to a standard of a reasonable man (or reasonable debt collector, in this case); it implies a duty to exercise reasonable diligence. Thus, sections 1692e(8) and 1785.25(a) impose a duty on debt collectors

7

to ensure they do not report inaccurate information to credit reporting agencies, and ensure that they report disputed debts as undisputed.

Given the information in the OASIS instruction manual, it is reasonably foreseeable that consumer disputes would be recorded in predecessor OCAs' Dispute Tabs. Given the statutory mandates prohibiting the reporting of inaccurate information, a reasonable debt collector in NCO's shoes would review its predecessors' Dispute Tabs for consumer disputes before reporting those accounts to CRAs. More importantly, a reasonable debt collector would have *used the Business Type buttons in order to access their predecessors' Dispute Tabs* because the OASIS manual indicated that is what an OCA needed to do to access predecessors' records. Because a reasonable debt collector would have sought to review its predecessors' records before reporting AT&T accounts to CRAs, it would have learned of the restrictions on its access to OASIS and would have had HOV restore access before it reported accounts to CRAs.

Nonetheless, NCO did not act like a reasonable debt collector here. NCO did not try to review its predecessors' Dispute Tabs. Rather, NCO simply assumed that AT&T never assigned it disputed debts (despite the fact that AT&T assigned NCO 5,510 disputed accounts). Consequently, NCO failed to detect the access restrictions in OASIS until after it began improperly reporting disputed accounts to CRAs.

The district court found that Holmes did not offer "any facts to support the claim that NCO should have known that it was not given the whole picture." (ER 6-7.) This assertion clearly and indelibly marks the error in the district court's ruling, because the district court failed to consider (or even mention in any way) the fact that NCO did not use the Business Type buttons. A reasonable debt collector in NCO's shoes would have necessarily used the Business Type buttons in order to review its predecessors' Dispute Tabs. Because NCO did not use the Business Type buttons, it did not review its predecessors' Dispute Tabs and did not detect the restrictions on its access to OASIS.

Further, the district court's decision erroneously suggests that the restrictions on NCO's access to OASIS were some sort of superseding cause or intervening act that cut off NCO's liability. (ER 7.) An intervening act only cuts off liability if it is unforeseeable. Here, a reasonable debt collector would have detected the restrictions on NCO's access to OASIS immediately, because a reasonable debt collector would have sought to access its predecessors' Dispute Tabs before reporting accounts to CRAs. In contrast, NCO never tried to review its predecessors' Dispute Tabs.

**ARGUMENT**

## I.    THE COURT SHOULD REVERSE THE DISTRICT COURT BECAUSE IT ERRED IN GRANTING SUMMARY JUDGMENT

The district court erred because it found that Holmes did not offer "any facts to support the claim that NCO should have known that it was not given the whole picture." (ER 6-7.) The FDCPA and the CCRAA impose statutory duties on NCO to perform a reasonable investigation of the records on OASIS. The standard for summary judgment on whether NCO's conduct was reasonable in this Circuit is exceedingly high: NCO must show that only one conclusion about the reasonableness of NCO's conduct is possible.

### A.    This Court Reviews the District Court's Decision De Novo

This Court reviews the district court's grant of summary judgment *de novo*. *FTC v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009); *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004).

### B.    The District Court Erred Granting Summary Judgment Because a Reasonable Finder of Fact Could Find in Favor of Holmes

A motion for summary judgment resolves "the threshold inquiry" of whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is

10

proper only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit"; hence, the "substantive law" of the underlying claim determines materiality. *Anderson*, 477 U.S. at 248.

Conversely, a movant for summary judgment "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party" to negate the existence of a "genuine dispute." *Soremekun v. Thrifty Payless*, Inc., 509 F.3d 978, 984 (9th Cir. 2007). *Cf. Anderson*, 477 U.S. at 248. On a motion for summary judgment, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation, punctuation omitted). "The possibility that other inferences could be drawn that would provide an alternate explanation for the [movant's] actions does not entitle [the movant] to summary judgment." *Mendocino Envm'tl Ctr. v. Mendocino County*, 192 F.3d 1283, 1303 (9th Cir. 1999). On the other hand, courts "must disregard all evidence favorable to the moving party that the jury is not required to believe," except evidence that "that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v.*

11

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (citation, punctuation omitted).

### 1.    NCO's Constructive Knowledge Is a Material Issue of Fact

The FDCPA and the CCRAA control which facts are material because they provide the "substantive law" in this case. *Anderson*, 477 U.S. at 248. Holmes prevails under the FDCPA and CCRAA if the evidence demonstrates that NCO failed to undertake a reasonable investigation before it reported AT&T's account to Experian. The FDCPA prohibits:

> Communicating or threatening to communicate to any person credit information which . . . *should be known to be false*, *including the failure to communicate that a disputed debt is disputed*.

15 U.S.C. § 1692e(8) (emphasis added).[2] Likewise, the CCRAA provides that:

> [a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or *should know the information is incomplete or inaccurate*.

Cal. Civ. Code § 1785.25(a) (emphasis added).[3] Holmes's claims prevail where

---

[2]    FDCPA section 1692e(8) applies to debt collectors which report inaccurate information to credit reporting agencies, *Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155 (D. Or. 2010); *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1233 (C.D. Cal. 2007), and specifically prohibits reporting a disputed debt without reporting that the debt is disputed. *Gostony v. Diem Corp.*, 320 F. Supp. 2d 932, 941-42 (D. Ariz. 2003); *Sullivan v. Equifax, Inc.*, No. 01-4336, 2002 WL 799856, at *2-5 (E.D. Pa. Apr. 19, 2002).

NCO should have known from AT&T's records that the account NCO reported to Experian was incomplete and failed to disclose Holmes's dispute of the AT&T account.

### 2. Under a Constructive Knowledge Standard, NCO Had an Affirmative Duty to Perform a Reasonable Investigation

Liability based on what a defendant "should know" equates to a constructive knowledge standard. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 & n.5 (9th Cir. 2001). "Constructive knowledge is measured by an objective standard: 'whether a reasonable man under the same or similar circumstances as those faced by the actor would be aware of the dangerous character of his conduct.'" *Rost v. United States*, 803 F.2d 448, 451 (9th Cir. 1986) (citation omitted). *See also Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1191 (2011) (when construing federal causes of action, courts "start from the premise that when Congress creates a federal tort it adopts the background of general tort law").

In effect, FDCPA section 1692e(8) and CCRAA section 1785.25(a) impose a duty on debt collectors to perform a reasonable investigation to ensure they do not furnish inaccurate or incomplete information to CRAs. A constructive

---

[3]   The CCRAA also applies to reporting disputed and inaccurate information to credit reporting agencies. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1170-74 (9th Cir. 2009).

knowledge standard of liability necessarily implies an affirmative duty to perform

a reasonable investigation:

> In a meaningful sense, then, imposition of a duty to inspect is no more
> than a specific application of the concept of constructive knowledge,
> since it is implicit in the principle that one is chargeable with
> knowledge of that which in the exercise of reasonable care he should
> have known.

*Shenker v. Baltimore & O. R. Co.*, 374 U.S. 1, 13 (1963). In the case of the claims

at bar, "that would mean that in the exercise of reasonable care [a debt collector]

should have inspected [documents recording whether an account is disputed] and is

chargeable with knowledge of that which a reasonable inspection would have

shown." *Id*.

> The words "should know" . . . denote the fact that a person of
> reasonable prudence and intelligence or of the superior intelligence of
> the actor would ascertain the fact in question in the performance of his
> duty to another, or would govern his conduct upon the assumption that
> such fact exists. . . . "Should know" indicates that the actor is under a
> duty to another to use reasonable diligence to ascertain the existence
> or non-existence of the fact in question and that he would ascertain the
> existence thereof in the proper performance of that duty.

Restatement (Second) of Torts § 12(2) & cmt. (1965). NCO had a duty to

undertake a reasonable investigation before reporting Holmes's account to the

credit reporting agencies.[4] In sum, Holmes could prevail on his claims by showing

---

[4]    This result is consistent with *Clark v. Capital Credit & Collection Services,
    Inc.*, 460 F.3d 1162 (9th Cir. 2006). Under *Clark*, a debt collector can establish
    a *bona fide* error defense in 15 U.S.C. § 1692k(c) if it "reasonably relies on the

that NCO acted unreasonably in its investigation of consumer dispute records stored on OASIS.

### 3. The Standard for Summary Judgment on Constructive Knowledge Is Very High

Summary judgment as to NCO's constructive knowledge was improper if there was a genuine dispute of fact, *i.e.*, if NCO did not show that no reasonable fact- finder could hold that NCO's investigation of OASIS was unreasonable. *See Anderson*, 477 U.S. at 248; *Soremekun*, 509 F.3d at 984.

The standard for summary judgment on a defendant's state of mind is exceedingly high. Summary judgment "is generally inappropriate when mental state is an issue, unless no reasonable inference supports the adverse party's claim." *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436 (9th Cir. 1984). *See also Jones v. Taber*, 648 F.2d 1201, 1204 (9th Cir. 1981) ("summary judgment is precluded when conflicting inferences might be drawn about a party's state of mind as reflected by objective indications"); *In re Cirrus*

---

debt reported by the creditor." *Clark*, 460 F.3d at 1177. "On the other hand, the *bona fide* error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable . . ." *Id*. Of course, in *Clark*, the defendant bore the burden of proof because *Clark* dealt with a debt collector's *affirmative defense* under 15 U.S.C. § 1692k(c). Holmes must prove constructive knowledge as part of his case in chief. Although the burden of proof is allocated differently, the underlying standard of liability is the same: did NCO act unreasonably when it reported Holmes's account without noting Holmes's dispute?

15

*Logic Sec. Litig.*, 946 F. Supp. 1446, 1456 (N.D. Cal. 1996) (citing *Herman &*

*MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983), for the proposition that

"circumstantial evidence [is] sufficient to prove scienter because of the difficulty

inherent in proving state of mind").

> Inasmuch as a determination of someone's state of mind usually
> entails the drawing of factual inferences as to which reasonable people
> might differ—a function traditionally left to the jury—summary
> judgment often will be an inappropriate means of resolving an issue of
> this character.

10B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2730

(3d ed. 2011).

This general rule against summary judgment as to a party's state of mind

extends to constructive knowledge: "Questions involving a person's state of mind,

*e.g.*, whether a party knew *or should have known* of a particular condition, are

generally factual issues inappropriate for resolution by summary judgment."

*Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985) (emphasis

added). *In re Software Toolworks, Inc.*, 50 F.3d 615 (9th Cir. 1994) articulates the

high standard for summary judgment in claims based on constructive knowledge in

this Circuit. *In re Software Toolworks* reversed summary judgment for defendant

underwriters against certain claims under the Securities Exchange Act. *Id*. at 625.

*In re Software Toolworks* held that

> [S]ummary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the "reasonable man" standard is thought ordinarily to preclude summary judgment. . . . Accordingly, reasonableness is appropriate for determination on a motion for summary judgment when only one conclusion about the conduct's reasonableness is possible.

*Id*. at 622 (quoting, *e.g.*, *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450 & n. 12 (1976) (summary judgment is only proper where "reasonable minds cannot differ")) (other citations, punctuation omitted). As set forth below, a reasonable finder of fact could indeed conclude from the record below that NCO's investigation of OASIS – and, in particular, NCO's failure to review its predecessors' Dispute Tabs – was unreasonable.

## II.    ON THE BASIS OF THE RECORD BELOW, A REASONABLE TRIER OF FACT WOULD FIND THAT NCO'S INVESTIGATION WAS UNREASONABLE

The Court should reverse summary judgment against Holmes because a reasonable fact-finder would conclude that NCO should have attempted to review its predecessors' account notes in OASIS. The fact that NCO did not have full access to OASIS is irrelevant. (*Cf*. 226-27 ¶¶8-9.) A reasonable debt collector would have *tried* to review its predecessors' Dispute Tabs, would have then become aware of the fact that its access to OASIS was restricted, and finally would have had HOV restore full access before it reported AT&T's accounts to CRAs.

NCO violated the FDCPA and the CCRAA because it did not review the pertinent records in OASIS, not because its access to OASIS was restricted.

### A.    NCO's Predecessors Stored Consumer Disputes in OASIS's Dispute Tab

OASIS stores and displays information concerning consumer disputes of AT&T's accounts in the portion of the interface called the Dispute Tab. (ER 65-66 ¶5; 95; 114.) The OASIS interface contains Business Type or Account Type buttons which allow OCAs to review information input by their predecessors. ER 65-66 ¶5; 94; 110; 112; 114; 116.) Holmes again reproduces OASIS's Navigation Bar below for the Court's review; the Business Type buttons are on the right-hand side underneath the date and time:



NCO could see the Business Type buttons in the OASIS interface even before NCO had full access to OASIS restored. (ER 70 ¶11; 130.) HOV produced a series of screenshots that display Holmes's account (and specifically the Dispute Tab) while using the Precollect, Primary, Secondary, and Tertiary Business Type buttons. (ER 67 ¶7; 110-17.) Holmes's dispute is plainly visible in the Secondary Dispute Tab. (ER 67 ¶7; 114.) Conversely, the Tertiary Dispute Tab for Holmes's account does not contain Holmes's dispute. (ER 67 ¶7; 116-17.)

By citing NCO's argument that Holmes's dispute was not visible in NCO's Dispute Tab, the district court revealed its lack of understanding of the OASIS interface. (ER 5-6; 226 ¶ 8; 233.) NCO was the Tertiary OCA for Holmes's account: its own Dispute Tab was naturally empty, because it had not input any information there. (ER 116-17.) OASIS does not display information input by an OCA's predecessors without the use of a Business Type button. (ER 65-66 ¶5; 94.) Here, NCO needed to use the Secondary Business Type button to access the Secondary OCA's Dispute Tab and review Holmes's dispute. (ER 114-15.)[5] As set forth below, NCO never tried to use the Business Type buttons, and in particular to review the Secondary Dispute Tab for Holmes's account, until after Holmes filed suit (ER 70 ¶12-13; 135-36).

### B.  The OASIS Manual Put NCO on Notice of the Consumer Disputes in its Predecessors' Dispute Tabs

NCO admitted it received AT&T's manual for the OASIS system before February 2010, when it reported Holmes's account to Experian. (ER 70 ¶14; 136.)

---

[5]  NCO's own screen shots are also misleading because they are cropped in a way that does not display the Business Type buttons. (*Cf.* ER 226 ¶8; 230-43 *with* ER 70 ¶11; 130 (HOV email stating that NCO's "screen shot[s] . . . display[] the lower left quadrant and a small portion of the lower right hand quadrant of the screen [but that the original OASIS] screen does display the Navigation Bar/Business Type Buttons").)

19

The OASIS manual unambiguously indicates that information relevant to account disputes are stored and displayed in OASIS's Dispute Tab:

> The Dispute Tab displays Dispute, Fraud Theft of Identity (TOI) and Cease and Dispute information. . . . To view the dispute information, click the Dispute Tab. Result: The Dispute Tab will appear.

(ER 65-66 ¶5; 95.) The OASIS manual also clearly described how OCAs could use the Business Type buttons (also known as Account Type buttons) to review notes from their predecessor OCAs:

> The top right corner of the screen displays the Account Type Buttons. You can click on the Precollect Button to display the Precollect account as reported by the Precollect OCA. You can click on the Primary Button to display the Primary account as reported by the Primary OCA. You can click on the Secondary Button to display the Secondary account as reported by the Secondary OCA. . . . The OCA is able to view their account and the associated account as reported by the OCA that worked the account previously. For example, the Secondary agency may view an account worked by the Precollect and Primary OCAs. The Primary OCA can view the account as reported by the Precollect OCA.

(ER 65-66 ¶5; 94.) As the district court recognized, "the [OASIS] manual makes reference to . . . earlier account treatment, and the database contains a dedicated place for noting disputes." (ER 6.)

### C.    A Reasonable Debt Collector Would Have Reviewed its Predecessors' Dispute Tabs Before Reporting AT&T's Accounts to CRAs

AT&T assigned NCO a total of 768,191 accounts for collection; NCO reported 343,773 of these accounts to CRAs as undisputed. (ER 226 ¶7; 227 ¶10.)

Given the sheer volume of AT&T accounts assigned to NCO and the information in the OASIS manual, a debt collector in NCO's position should have (1) recognized a possibility (or even likelihood) that some of those accounts might have been disputed and (2) tried to review its predecessors' Dispute Tabs to determine whether the assigned accounts were, in fact, disputed.[6] (ER 56-57.) Indeed, 5,510 of the accounts AT&T assigned to NCO contained a notation in a predecessor OCA's Dispute Tab at the time AT&T assigned the account to NCO which indicated that the account was disputed. (ER 67-68 ¶8; 120.) (NCO reported at least 1,375 of such accounts to the CRAs. (ER 23 ¶3.).) In particular, the OASIS manual put NCO on notice that it needed to *use the Business Type buttons* to view the Holmes dispute in the Secondary Dispute Tab. (ER 57; 65-66 ¶5; 94.) A reasonable debt collector in possession of the OASIS manual would have reviewed the Secondary Dispute Tab for Holmes's account and noted his dispute before reporting the account to CRAs.

---

[6] The Court does not need to agree to rule in Holmes's favor.. Rather, the Court only need conclude that a "reasonable trier of fact" *could* find it was unreasonable for NCO to report accounts to CRAs until it reviewed its predecessors' Dispute Tabs. *Soremekun*, 509 F.3d at 984; *In re Software Toolworks*, 50 F.3d at 622.

### D.  NCO Had No Reasonable Basis to Assume That AT&T Did Not Assign It Disputed Debts

NCO submitted a declaration from its vice president, Jim Scott, which averred that, "[b]ased on [his] personal observation and experience, as a matter of general practice, AT&T did not place disputed accounts with NCO for collection." (ER 228 ¶12.) In fact, the record is clear that there was no basis for NCO's assumption that AT&T did not assign disputed accounts to NCO. At the outset, of course, AT&T *did* assign NCO 5,510 disputed accounts. (ER 67-68 ¶8; 120.) Moreover, the OASIS manual expressly instructs OCAs on how to handle disputed accounts. (ER 95-108.) The most reasonable inference from this fact is that NCO knew or should have known that AT&T was assigning disputed accounts through the OASIS system. *Cf. Scott*, 550 U.S. at 378 (at summary judgment, all "reasonable inferences [drawn] in the light most favorable to" nonmovant).

Additionally, NCO presented no viable evidence to support its assumption. In discovery, Holmes requested NCO to admit:

> that [NCO] has no evidence to support the contention that AT&T Communications of California, Inc. does not assign accounts which have been dispute by a consumer to [NCO] for collection.

(ER 70 ¶15; 140.) NCO FS denied Holmes's request for admission and stated that "[a]s set forth in the Declaration of Jim Scott, as a matter of general practice AT&T has not placed disputed accounts with NCO for collection." (ER 71 ¶15;

22

141.) Holmes requested NCO to produce "[a]ll documents which [NCO] created, viewed, referred to, or relied on preparing its response" to the foregoing request for admission. (ER 71 ¶15; 144.) NCO never produced any responsive document other than Scott's declaration. (ER 71 ¶15.) NCO did not provide, for example, any contract or any communication from AT&T to support the assumption that AT&T would never assign NCO disputed accounts.

*Hence, the only evidence NCO presents to support its belief that AT&T did not assign NCO disputed accounts is the declaration of its own vice president.* Scott's "personal observation and experience" was not sufficient for summary judgment. A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence" is not a sufficient basis for summary judgment. *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.1997) (quoted by, *e.g.*, *In re Caneva*, 550 F.3d 755, 763 (9th Cir. 2008)). NCO cannot comply with Rule 56 by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). *Cf. Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1004-05 (9th Cir. 2008) (affirming summary judgment for FDCPA plaintiff despite defendant's "conclusory declaration asserting that it had adequate procedures in place to catch errors"). Rule 56 required NCO "to come forward with" evidence to support Scott's "conclusory statement"; the Scott declaration failed to provide "any

23

specific facts within his personal knowledge in support of this assertion." *Thornhill Pub. Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). At best, the record shows NCO simply *assumed* that AT&T screened disputed accounts out before assigning them to NCO.

In fact, even if the Court takes the Scott declaration at face value, it does not support the conclusion that NCO did not need to check its predecessors' Dispute Tabs before reporting accounts to CRAs. The Scott declaration does not assert, without qualification, that AT&T *never* assigned disputed accounts to NCO.[7] NCO cannot make such an unqualified assertion, because AT&T assigned at least 5,510 disputed accounts to NCO. (ER 67-68 ¶8; 120.) Indeed, the Scott declaration carefully qualified its assertion that, "***as a matter of general practice***, AT&T did not place disputed accounts with NCO for collection." (ER 228 ¶12 (emphasis added).) Given this qualification, it is reasonable to infer that NCO knew or should have known that AT&T assigned disputed accounts to NCO. Certainly, it was unreasonable for NCO to act on the assumption that *none* of the 343,773 AT&T accounts it reported were disputed without any basis other than the Scott declaration. *Cf. Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1170 (9th Cir.

---

[7]    Additionally, AT&T's practices are irrelevant to the existence of NCO's affirmative duty to determine whether AT&T's accounts were disputed. If AT&T never affirmatively stated that it would not assign disputed accounts to NCO, NCO still had a duty to check on the accounts' dispute status – even if AT&T had not assigned a disputed account to NCO for many years.

1998) (genuine issues of material fact as to defendant's constructive knowledge that it misappropriated plaintiff's trade secrets precluded summary judgment where there was evidence "which a jury could determine would have made a reasonable person suspicious").

### E.    NCO Did Not Review Its Predecessors' Dispute Tabs

The record below leads to only one conclusion: NCO did not try to review its predecessors' Dispute Tabs in OASIS until March 10, 2011 (*i.e.*, after Holmes filed suit). NCO stated in its discovery responses that "it is not possible to admit or deny whether any NCO employee with access to Oasis attempted, at any point before March 1, 2011, to review information input into the Dispute Tab by prior OCAs." (ER 70 ¶12.) However, NCO admitted that (1) "before March 14, 2011, it had no access to information input into the Dispute Tab by prior OCAs"; (2) it did not know that its access to OASIS was restricted before investigating Holmes's claims; and (3) did not ask HOV for access to predecessor Dispute Tabs before March 1, 2011. (ER 70 ¶¶12-13; 135-36.) Likewise, HOV (OASIS's administer) stated it has no evidence that NCO "tried to use the Business Type Buttons prior to March 10, 2011, and that NCO did not ask about reviewing its predecessors' OASIS account notes before March 10, 2011. (ER 68-69 ¶¶9, 11; 122; 130.)

The only reasonable inference from the record is that NCO never tried to access its predecessor OCAs' Dispute Tabs before Holmes filed his complaint.[8] At the very least, this is a reasonable inference the district court should have drawn in Holmes's favor. *Cf. Scott*, 550 U.S. at 378. The weight of the evidence is that NCO reported AT&T accounts without first reviewing its predecessor OCAs' Dispute Tabs. In *Armstrong v. United States*, No. 07-3793, 2008 WL 5047680 (N.D. Cal. Nov. 24, 2008), the court denied summary judgment because the defendant "did not have a policy of inspecting the lot [where plaintiff sustained an injury] for holes," and found that "the finder of fact may draw an inference that [the hole which injured plaintiff] existed long enough to be reasonably discovered." *Id*. at *6. Analogously, NCO acted unreasonably because it did not check the parts of OASIS where consumer disputes could be found before reporting accounts to the CRAs.

---

[8] If NCO had tried to access its predecessors' Dispute Tabs, it presumably would have alerted HOV to restore proper access earlier. The only alternate possibility is that NCO tried to access its predecessors' Dispute Tabs, and neglected to communicate with HOV in order to correct the issue. This possibility is inconsistent with NCO's own evidence, and would still lead to the conclusion that NCO acted unreasonably. (ER 70 ¶13; 136.)

**F.    The Fact that NCO Did Not Have Complete Access to OASIS Is Immaterial**

The district court appears to rely heavily on evidence that OASIS was misconfigured in a way that restricted NCO's access to its predecessors' Dispute Tabs. (ER 6. *See also* ER 226-27 ¶¶8-9.) This reliance is entirely misplaced. It is clear that a reasonable debt collector would have checked its predecessors' Dispute Tabs before reporting an AT&T account to the CRAs. Because a reasonable debt collector would have tried to access its predecessors' Dispute Tabs, it would have immediately learned of the restrictions on its access to OASIS – and would then have allowed HOV to restore access before it began reporting accounts to the CRAs. NCO alerted HOV to the fact that it did not have access its predecessors' Dispute Tabs on March 10, 2011; HOV restored full access to NCO within six business days. (ER 69 ¶11; 130.) HOV indicated it would have restored NCO's access earlier if NCO had requested it previously. (ER 69 ¶11; 125.) Plainly, NCO had no duty to report AT&T's accounts to CRAs; it stopped reporting AT&T accounts soon after it discovered the limitations on its access to OASIS without any protest from AT&T. (ER 227 ¶11.) NCO should have checked its predecessors' Dispute Tabs. Had it done so, NCO would have discovered the restrictions on its access to the Dispute Tabs and could have easily had its access to OASIS restored before it continued on to reporting the AT&T accounts.

27

The decision below did not effectively rebut the conclusion that NCO should have discovered the limitations on its access. The district court cited the argument that "it was not reasonable for NCO to recognize that its access had been mistakenly limited" because it "was not responsible for setting the access configurations." (ER 6. *See also* ER 20.) This argument fails for several reasons. First, there is no authority to support the conclusion that a third party configured OASIS somehow absolves NCO from liability as a matter of law. That argument suggests a defense in the nature of a superseding cause.[9] *Cf. Staub*, 131 S. Ct. at 1191 (courts presume that "when Congress creates a federal tort it adopts the background of general tort law"). A superseding cause only applies where "the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996). "[F]oreseeable intervening causes will not supersede the defendant's

---

[9]     A defendant's "conduct is not the proximate cause of [the plaintiff's] alleged injuries if another cause intervenes and supersedes his liability for the subsequent events." *White*, 901 F.2d at 1506 (9th Cir. 1990) (citing Restatement (Second) of Torts §§ 440–53 (1965)).

> A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.

Restatement (Second) of Torts § 440 (1965). "Superseding cause operates to cut off the liability of an admittedly negligent defendant[.]" *Exxon Co.*, 517 U.S. at 837.

responsibility." *White v. Roper*, 901 F.2d 1501, 1506 (9th Cir. 1990) (citation, punctuation omitted). *Cf. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 783 n. 34 (9th Cir. 2000) ("foreseeability analysis" is "widely accepted by both federal and state [courts] as a conventional method of assessing proximate [*i.e.*, legal] cause"). Hence, the OASIS's misconfiguration cannot foreclose NCO's liability as a matter of law unless it was unforeseeable. Had NCO exercised reasonable diligence and checked its predecessors' Dispute Tabs, the erroneous access restrictions would have been immediately apparent and eminently foreseeable. More bluntly, *the proximate cause for NCO reporting Holmes's account as undisputed was NCO's failure to check its predecessors' Dispute Tabs – **not whether NCO had access to its predecessors' Dispute Tabs at the time***.

Second, the record suggests that *NCO* was itself responsible for the restrictions on its access to OASIS. In HOV's email which "document[ed] the identification and remedy of [the] access limitation," HOV stated that the "incorrect client code will effect [sic] your ability to view the prior OCAs accounts," and NCO should send a "list of the SW Tertiary NCO account numbers with the correct OASIS Client Code." (ER 227 ¶9; 245.) After it restored NCO's access, HOV emailed that NCO should be "able view the prior OCA's accounts when your account is not cancelled with the exception of the SW Tertiary accounts

29

that were sent with the Secondary client code." (ER 227 ¶9; 245.) When Holmes asked HOV how "the Tertiary accounts identified in [HOV's foregoing emails came] to be coded as Secondary accounts," HOV replied that "NCO sent the Southwest Secondary client code in their OASIS Account files." (ER 69 ¶11; 130.) In short, NCO's access to its accounts was limited because NCO itself improperly coded those accounts.

Finally, the district court cited NCO's argument that the OASIS manual led NCO to believe that it had access to its predecessors' Dispute Tab. (ER 6. *See also* ER 20.) This is a non-sequitur: *whether or not NCO believed it had access to the Dispute Tabs or had a basis for such a belief is irrelevant*. A reasonable debt collector would have sought access to the Dispute Tabs, NCO never did so, and – if it had done so – it would have avoided violating the FDCPA and the CCRAA.

## III.    HOLMES SHOULD HAVE RECEIVED TIME FOR MORE DISCOVERY

The district court's decision did not address Holmes's motion for additional discovery under Rule 56(d). (*Cf.* ER 2-7 *with* 61-62.) Rule 56 provides that a Court may allow a non-movant more time to collect and "present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "A district court's decision not to permit further discovery" on a motion for summary judgment is subject to *de novo* review "'if the trial judge fails to address the motion before granting summary judgment.'"

30

*Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (quoting *Qualls v. Blue Cross of Cal.*, 22 F.3d 839, 844 (9th Cir.1994)). *See also Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007).

Holmes should have received additional time to take discovery. Before the motion for summary judgment, Holmes had acted based on NCO's representation that the parties would to attempt to settle this case at the magistrate's settlement conference. (ER 72 ¶16.) Holmes deliberately restricted his discovery to that necessary to settle the case because of NCO's representations. (ER 71-72 ¶16.) Thus, Holmes had not completed his discovery. (ER 72 ¶16.)

Again, Holmes contends that there was more than sufficient evidence in the record to deny summary judgment. (ER 62; 72 ¶16.) However, Holmes sought additional time to take discovery in the event that the district court found it was necessary to defeat summary judgment. (ER 61-62.) It would be appropriate to remand to permit Holmes to take additional discovery, if the Court determines that Holmes needed to present additional evidence as to identifying the party who was responsible for the restrictions on NCO's access to OASIS, additional evidence that HOV should have known that its access to OASIS was restricted, or to present testimony from HOV in a deposition format. *Cf. Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) ("facts underlying" a declaration opposing summary

judgment "must be of a type that would be admissible as evidence," the declaration itself "does not have to be in a form that would be admissible at trial").

## IV.    THIS COURT SHOULD REASSIGN THIS CASE ON REMAND

This Court will reassign a case on remand to a different district court judge where

> the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected.

*Earp v. Cullen*, 623 F.3d 1065, 1071 (9th Cir. 2010) (quoting *United States v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777, 780 (9th Cir.1986)). Here, the district court held that Holmes had not shown any evidence "to demonstrate that NCO was able to access the information regarding disputed debt at any time prior to March 2011" or "to support the claim that NCO should have known that it was not given the whole picture." (ER 6; 7.) As Holmes argues forth above, this is incorrect. A reasonable debt collector in NCO's shoes would have used the Business Type buttons to review the Secondary Dispute Tab for Holmes's account, and would have discovered the restrictions on its access to OASIS. In contrast, the district court based its decision on the fact that NCO's Tertiary Dispute Tab was empty. (ER 5-6.) Where a district court makes explicit factual findings, the Court "cannot reasonably expect the district judge to set aside these credibility findings and

32

reassess the viability of [plaintiff's] claim[s]." *Earp*, 623 F.3d at 1072. Given the nature of the district court's factual findings, the original district court judge will likely have difficulty putting out of her mind previously-expressed findings about NCO's interactions with the OASIS interface.

## V.     CONCLUSION

Holmes respectfully asks the Court to reverse the summary judgment entered on his claims by the district court, and to remand this case to a different judge.

Dated: February 10, 2012     By: _____s/Ethan Preston_____

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Suite 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

**Statement of Related Cases**

There are no related cases pending in this Court

**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 7,634 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the

typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements

of Fed. R. App. P. 32(a)(6) because: this brief has been prepared in a

proportionally spaced typeface using Microsoft Word Version 2007 and in a

proportionally spaced typeface of 14 points or more.


Dated: February 10, 2012    By: _____s/David C. Parisi_____

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Suite 1630-430
Phoenix, Arizona 85050

(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Harold Holmes v. NCO Financial Systems, Inc.*

Case No. 11-56969

**Statutory Addendum**

| **Document** | **Page** |
|---|---|
| 15 U.S.C. § 1692e(8) | App. 1 |
| Cal. Civil Code § 1785.25(a) | App. 2 |
| Fed. R. Civ. P. 56 | App. 3 |

15 U.S.C. § 1692e.

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(8)     Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

California Civil Code § 1785.25.

(a)     A person shall not furnish information on a specific transaction or

experience to any consumer credit reporting agency if the person knows or

should know the information is incomplete or inaccurate.

Federal Rule of Civil Procedure 56.

(a)     MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY

         JUDGMENT

         A party may move for summary judgment, identifying each claim or

         defense—or the part of each claim or defense—on which summary

         judgment is sought. The court shall grant summary judgment if the movant

         shows that there is no genuine dispute as to any material fact and the movant

         is entitled to judgment as a matter of law. The court should state on the

         record the reasons for granting or denying the motion.

. . .

(c)     PROCEDURES.

         (1)     Supporting Factual Positions. A party asserting that a fact

                 cannot be or is genuinely disputed must support the assertion

                 by:

                         (A)     citing to particular parts of materials in the record,

                                 including depositions, documents, electronically

                                 stored information, affidavits or declarations,

                                 stipulations (including those made for purposes of

                                 the motion only), admissions, interrogatory

                                 answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take

discovery; or

    (3)    issue any other appropriate order.

(e)    FAILING TO PROPERLY SUPPORT OR ADDRESS A FACT. If a party

fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c), the court may:

    (1)    give an opportunity to properly support or address the fact;

    (2)    consider the fact undisputed for purposes of the motion;

    (3)    grant summary judgment if the motion and supporting

materials—including the facts considered undisputed—show

that the movant is entitled to it; or

    (4)    issue any other appropriate order.

. . .

## <u>PROOF OF SERVICE</u>

I hereby certify that on the 10th day of February, 2012, I electronically filed **Brief of Appellant** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that on the 10th day of February, 2012, I have mailed **Brief of Appellant** by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrer for delivery within 3 calendar days to the following non-CM/ECF participants:

| | |
|---|---|
| David Israel<br>SESSIONS, FISHMAN, NATHAN &<br>ISRAEL, L.L.C.<br>3850 N. Causeway Blvd., Suite 200<br>Metairie, Louisiana 70002-7227 | *Counsel for Defendant/Appellee NCO*<br>*Financial Systems, Inc.* |

I further certify that on the 10th day of February, 2012, pursuant to Fed. R. App. 25(d)(2), I filed, via Federal Express, with the Clerk of the Court at San Francisco, California 4 copies of **Appellant's Excerpts of Record, Volumes 1 and 2**, addressed as follows:

| |
|---|
| Office of the Clerk<br>James R. Browning Courthouse<br>U.S. Court of Appeals<br>95 Seventh Street<br>San Francisco, California  94103-1526 |

I further certify that on the 10th day of February, 2012, I mailed a copy of

**Appellant's Excerpts of Record, Volumes 1 and 2** by First Class Mail, postage

prepaid, or have dispatched it to a third commercial carrier for delivery within 3

calendar days, to the following counsel of record for Defendant/Appellee NCO

Financial Systems, Inc.:

| | |
|---|---|
| David Israel<br>SESSIONS, FISHMAN, NATHAN &<br>ISRAEL, L.L.C.<br>3850 N. Causeway Blvd., Suite 200<br>Metairie, Louisiana 70002-7227 | *Counsel for Defendant/Appellee NCO<br>Financial Systems, Inc.* |
| Debbie Kirkpatrick<br>SESSIONS FISHMAN NATHAN AND<br>ISRAEL<br>1545 Hotel Circle South, Suite 150<br>San Diego, California  92108 | *Counsel for Defendant/Appellee NCO<br>Financial Systems, Inc.* |

Dated: February 10, 2012    By:  _____ s/David C. Parisi _____

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com