**Docket No. 11-56969**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

HAROLD HOLMES, an Individual,
on His Own Behalf and on Behalf of all Others Similarly Situated,

*Plaintiff-Appellant,*

v.

NCO FINANCIAL SERVICES, INC.,

*Defendant-Appellee.*

*Appeal from a Decision of the United States District Court for the Southern District of California,*
*No. 3:10-cv-02543-H-RBB · Honorable Marilyn L. Huff*

## BRIEF OF APPELLEE

DEBBIE P. KIRKPATRICK, ESQ.
SESSIONS FISHMAN NATHAN &
ISRAEL, LLP
1545 Hotel Circle South
Suite 150
San Diego, California 92108
(619) 758-1891 Telephone
(619) 296-2013 Facsimile

DAVID ISRAEL, ESQ.
SESSIONS FISHMAN NATHAN &
ISRAEL, LLC
3850 North Causeway Boulevard
Suite 200
Metairie, Louisiana 70002
(504) 828-3700 Telephone
(504) 828-3737 Facsimile

*Attorneys for Appellee, NCO Financial Services, Inc.*



**DEFENDANT NCO FINANCIAL SYSTEMS, INC.'S**
**FRAP 26.1 CORPORATE DISCLOSURE STATEMENT**

NCO Financial Systems, Inc., a Pennsylvania corporation, is wholly owned by Compass International Services Corporation, a Delaware corporation.  Both of the above-mentioned corporations are wholly owned by NCO Group, Inc., a Delaware corporation.  One Equity Partners and its corporate affiliates, which are affiliates of JP Morgan Chase & Co., own approximately 88% of NCO Group, Inc. stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE ISSUES ............................................................ 1

STATEMENT OF FACTS ................................................................... 3

SUMMARY OF ARGUMENT ............................................................... 7

ARGUMENT ................................................................................. 10

I.     The FDCPA and CCRAA Do Not Impose on Debt
Collectors an Affirmative Duty to Conduct an
Investigation Prior to Furnishing Account Information
to Consumer Credit Reporting Agencies ............................................. 10

     A.    The FDCPA Cause of Action ................................................ 12

          1.    Section 1692e(8) of the FDCPA Does Not
Impose on Debt Collectors a Duty to
Investigate Prior to Credit Reporting a Debt .................. 12

          2.    Authorities Addressing Claims Under § 1692e(8)
Demonstrate How "Know or Should Have
Known" is Properly Interpreted .................................. 15

          3.    Holmes Must Show NCO Had Actual or
Constructive Knowledge of His Dispute ...................... 19

          4.    The FDCPA Does Not Specifically Regulate
Furnishing Information to Credit Reporting
Agencies and Statutes that Provide Such
Regulation Do Not Impose the Duty of
Investigation Envisioned by Holmes ........................... 21

     B.    The CCRAA Cause of Action ............................................. 27

1.    Section 1785.25(a) of the CCRAA Does Not Impose a Duty to Investigate Prior to Credit Reporting a Debt.................................................27

2.    Section 1785.25(a) of the CCRAA Does Not Regulate Credit Reporting a Disputed Debt Without Noting it as Disputed and the Provision Which Regulates Such Conduct is Preempted by the FCRA.................................................28

II.    NCO is Entitled to Judgment as a Matter of Law on the Claims NCO Breached Duties Under 15 U.S.C. § 1692e(8) and California Civil Code § 1785.25(a) as Described in Holmes's Issues on Appeal.................................................32

III.    No Reasonable Trier of Fact Could Have Found NCO Should Have Known Holmes's Account Was Disputed.................................................33

IV.    Holmes Did Not Comply With the Requirements of FRCP 56(d).................................................40

V.    CONCLUSION.................................................42

CERTIFICATE OF COMPLIANCE.................................................43

STATEMENT OF RELATED CASES.................................................44

CERTIFICATE OF SERVICE.................................................45

# TABLE OF AUTHORITIES

## CASES

*Amond v. Brincefield, Hartnett & Associates*,
  175 F.3d 1013, 1999 WL 152555 (4th Cir. 1999)........................................14

*Azar v. Hayter*,
  874 F.Supp. 1314 (N.D. Fla. 1994),
  aff'd without opinion, 66 F.3d 342 (11th Cir. 1995)....................................13

*Brady v. Credit Recovery Co.*,
  160 F.3d 64 (1st Cir. 1998).............................................................................19

*Chaudhry v. Gallerizzo*,
  174 F.3d 394 (4th Cir. 1999) ........................................................................13

*Clark v. Capital Credit & Collection Services, Inc.*,
  460 F.3d 1162 (9th Cir. 2006)  ..............................................................12, 20

*Daley v. A & S Collection Associates, Inc.*,
  717 F.Supp.2d 1150 (D. Or. 2010).........................................................17, 23

*Ducrest v. Alco Collections*,
  931 F.Supp 459 (M.D. La. 1996) ..................................................................14

*Farren v. RJM Acquisition Funding, LLC*,
  2005 WL 1799413 (E.D.Pa.).....................................................................25, 26

*Gilmore v. Account Management, Inc.*,
  2009 WL 2848278 (N.D. Ga. 2009)...............................................................16

*Gorman v. Wolpoff & Abramson, LLP*,
  584 F.3d 1147 (9th Cir. 2009) ...............................................................*passim*

*Gostony v. Diem Corporation*,
  320 F.Supp.2d 932 (D.Az. 2003) ..................................................................18

*Graziano v. Harrison*,
  950 F.2d 107 (3rd Cir. 1991) .........................................................................13

*Hayes v. North State Law Enforcement Officers Ass'n,*
    10 F.3d 207 (4th Cir. 1993) ............................................................42

*Heintz v. Jenkins,*
    514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) ..............................14

*Jenkins v. Heintz,*
    124 F.3d 824 (7th Cir. 1997) ........................................................14

*Kaplan v. Assetcare, Inc.,*
    88 F.Supp.2d 1355 (S.D. Fla. 2000) ..................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ...............................33

*Nelson v. Chase Manhattan Mortgage Corp.,*
    282 F.3d 1057 (9th Cir. 2002) ......................................................22

*Nelson v. Equifax Information Services, LLC,*
    522 F.Supp.2d 1222 (C.D. Cal. 2007) ................................................22

*Poulin v. The Thomas Agency,*
    760 F.Supp.2d 151 (D. Me. 2011) ....................................................13

*Rost v. United States,*
    803 F.2d 448 (9th Cir. 1986) ....................................................15, 33

*Shenker v. Baltimore & Ohio RR Co.,*
    374 U.S.1, 83 S.Ct. 1667 (1963) ...................................................15

*Slanina v. United Recovery Systems, LP,*
    2011 WL 5008367 (M.D. Pa.).......................................................13

*Smith v. National Credit Systems, Inc.,*
    807 F.Supp.2d 836 (D. Az. 2001) ..................................................16

*Sweats Fashions, Inc. v. Pannill Knitting Co.,*
    833 F.2d 1560 (Fed. Cir. 1987) ....................................................41

*Van Horn v. Watson*,
   45 Cal.4th 322, 86 Cal.Rptr.3d 350, 197 P.3d 164 (2008)...........................29

*Wang v. Asset Acceptance, LLC*,
   681 F.Supp.2d 1143 (N.D. Cal 2010)........................................28, 29, 30, 31

*Westra v. Credit Control of Pinellas*,
   409 F.3d 825 (7th Cir. 2005) .............................................................23, 24, 25

*Wilhelm v. Credico, Inc.*,
   519 F.3d 416 (8th Cir. 2008) ..................................................................20, 21

**STATUTES**

15 U.S.C. § 1681, et seq...............................................................................22

15 U.S.C. § 1681i(a)(2)(A) ...........................................................................23

15 U.S.C. § 1681s-2(a)(3) .............................................................................30

15 U.S.C. § 1681s-2(b) .............................................................................30, 31

15 U.S.C. § 1681s-2(b)(1).............................................................................22

15 U.S.C. § 1681s-2(b)(1)(A) .......................................................................23

15 U.S.C. § 1681t(b)(1)(F) ..............................................................................2

15 U.S.C. § 1681t(b)(1)(F)(ii).................................................................27, 29

15 U.S.C. § 1692, et seq............................................................................7, 11

15 U.S.C. § 1692e(8) ............................................................................*passim*

15 U.S.C. § 1692g.........................................................................................12

53 Fed.Reg 50097-02 (Dec. 13, 1992)..........................................................21

California Civil Code § 1785.1, et seq.......................................................7, 11

California Civil Code  § 1785.16(a) ...................................................27

California Civil Code  § 1785.25(a) ..............................................*passim*

California Civil Code § 1785.25(c) ...............................................*passim*

California Civil Code  § 1785.25(f) .................................................27

Federal Rules of Civil Procedure 11 .........................................14, 15

Federal Rules of Civil Procedure 56(d) ...............................2, 40, 41

Federal Rules of Civil Procedure 56(f) .................................................41

## STATEMENT OF THE ISSUES

1.     Does a debt collector, who lacks actual knowledge of a consumer's dispute, have an affirmative duty under 15 U.S.C. § 1692e(8) and/or California Civil Code § 1785.25(a) to conduct an investigation to determine whether the consumer disputed the debt with debt collectors that had previously handled the account?

2.     Assuming that there is such a duty under 15 U.S.C. § 1692e(8) and/or California Civil Code § 1785.25(a), could a reasonable trier of fact have found, based on the evidence in the record and reasonable inferences therefrom, that NCO breached the duty by placing Holmes's AT&T account on his credit report without noting it was disputed?

3.     Could a reasonable trier of fact have found, based on the evidence in the record and reasonable inferences therefrom, that NCO knew or should have known that Holmes's AT&T account was disputed with previous debt collectors before the account was placed with NCO such that NCO violated 15 U.S.C. § 1692e(8) and/or California Civil Code § 1785.25(a) by placing the account on Holmes's credit report without noting it was disputed?

4.     Is the substance of Holmes's claim, which has been asserted under California Civil Code § 1785.25(a), actually a claim under California Civil Code §

1

1785.25(c) and thus pre-empted by 15 U.S.C. § 1681t(b)(1)(F) of the Fair Credit Reporting Act?

5.    Did the district court err by not deferring consideration of NCO's summary judgment motion to allow Holmes additional time for discovery where Holmes failed to submit to the district court an affidavit or declaration, pursuant to Federal Rules of Civil Procedure 56(d), showing that, for specified reasons, he could not present facts sufficient to justify his position?

## STATEMENT OF FACTS

NCO is a debt collection company.  (ER 224 ¶ 3.) AT&T accounts are placed with NCO for collection through AT&T's transmission of an electronic file known as an AF file.  (ER 225 ¶ 6.) NCO uploads AF files into its own computer system, known as CRS, and then creates Metro 2 files which are used to provide account information to credit reporting agencies. (ER 225 ¶ 6.)  NCO documents its collection efforts in the CRS system, and uses Oasis to upload documentation of its account handling activity to AT&T. (ER 225 ¶ 6.)

AT&T placed Holmes's account with NCO on October 21, 2009, with a balance of $305.41.  (ER 224-225 ¶¶ 3, 4.)  The AF file for the account did not contain any information regarding Holmes's dispute of the account.  (ER 225 ¶ 6.) NCO credit reported the account on or about February 5, 2010.  (ER 224-225 ¶ 4; ER 75.) NCO made two calls on the account, on November 3, 2009 and June 8, 2010, but had no contact with Holmes.  (ER 224-225 ¶ 4.)  Holmes never advised NCO that he disputed his AT&T account.  (ER 224-225 ¶ 4.) The account was recalled by AT&T on July 19, 2010.  (ER 224-225 ¶ 4.) NCO's credit reporting of the account was deleted.  (ER 225 ¶ 6.)  The parties agree that NCO did not have actual notice that Holmes disputed the account prior to the time when NCO reported the debt to the credit bureau.

3

AT&T maintains a system known as Oasis through an outside vendor named HOV Services.  Oasis is a web-based portal that AT&T uses to provide account information to collection agencies such as NCO.  (ER 225 ¶ 5.) NCO maintains a licensing agreement with HOV that allows NCO to obtain access to the Oasis system. (ER 225 ¶ 5.)

In his Complaint, Holmes alleged that documentation of his dispute with a previous collection agency could be viewed in Oasis by all collection agencies to which AT&T subsequently assigned the account, including NCO.  NCO reviewed Holmes's account in Oasis in light of this contention, but was unable to access any notation of his dispute.  (ER 226 ¶ 8.) The "Dispute Tab" is a section that exists in each account in Oasis regardless of whether the account is disputed.  (ER 226 ¶ 8.) The Dispute Tab for the Holmes account was visible to NCO, but was empty of any content concerning a dispute. (ER 226 ¶ 8.) In other words, upon reviewing the "Dispute" portion of Holmes's account, NCO could see no record that he had ever disputed the account.  NCO produced to Holmes's counsel screen shots of every area in Oasis that NCO could view for the account prior to March 14, 2011. (ER 226 ¶ 8; 230-243.)  There was no documentation of Holmes's dispute with previous collection agencies in any of the areas of Oasis to which NCO had access. (ER 226 ¶ 8; 230-243.)

NCO investigated with an HOV representative this discrepancy between what NCO could see in Oasis and what Holmes claimed was documented in Oasis concerning his dispute. (ER 226-227 ¶ 9.) HOV discovered there was an access limitation applied to NCO "User IDs", which prevented NCO users from having full access to information in Oasis. The information NCO was prevented from accessing included records supplied by previous collection agencies (including a notice of a dispute). (ER 226-227 ¶ 9.) In response to inquiries made within the context of this lawsuit, HOV remedied this access limitation on March 14, 2011. (ER 226-227 ¶ 9; 245.) NCO was not aware that its access to Oasis was limited prior to March 2011, or that information of earlier disputes on some accounts was being maintained outside of areas that were accessible to NCO. (ER 226-227 ¶ 9; 245.) Stated differently, prior to March 14, 2011, NCO was not aware that it was not being given access to see the whole picture concerning account histories maintained in Oasis.

Holmes's AT&T account is a type of collection account known as a West Consumer Tertiary ("WCT") account. (ER 225-226 ¶ 7.) Holmes's account was among the first group of 275,771 WCT accounts that AT&T placed with NCO for collection. (ER 224 ¶ 3; 225-226 ¶ 7.) A total of 768,191 WCT accounts were placed with NCO from October 2009 to June 2011. (ER 225-226 ¶ 7.) Holmes's account was one of 343,733 accounts AT&T placed with NCO that was credit

reported during the one-year time period relevant to the claims at issue in this case. (ER 227 ¶ 10.)

NCO had no reason to suspect the Holmes account had been disputed with a previous agency. Upon placement of these WCT accounts, AT&T did not provide NCO direct notice that *any* were disputed. (ER 227 ¶ 10.) Holmes did not provide NCO notice that his account was disputed. (ER 224-225 ¶ 4.) Moreover, according to information provided by HOV, only 1,375 consumer accounts, or one-third of 1% of the 343,773 total accounts NCO credit reported, had a notation of a dispute in Oasis. (ER 23 ¶ 3.) This fact is consistent with NCO's experience that as a matter of general practice AT&T did not place disputed accounts with AT&T for collection. (ER 228 ¶ 12.) Finally, the Oasis manual, which Holmes contends should have put NCO on notice that it was lacking access to data in Oasis concerning Holmes's dispute, has an October 2010 release date. (ER 88.) This post-dates NCO's February 2010 credit reporting of the account. (ER 75.)

## SUMMARY OF ARGUMENT

Holmes asserts NCO had a duty to conduct a reasonable investigation before credit reporting his AT&T account to determine whether it was disputed.  Indeed, Holmes faults NCO for *failing to discover it lacked access* to records reflecting Holmes's dispute of his account with previous collection agencies. The duties described by Holmes do not appear in the text of either 15 U.S.C. § 1692e(8) or California Civil Code § 1785.25(a), nor are they imposed, with respect to these sections, elsewhere within the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* or the Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.1, *et seq.*  Moreover, there is nothing in judicial opinions interpreting these statutes which impose the duties Holmes describes.  For this reason, Holmes's claims fail as a matter of law and the Court should affirm summary judgment in favor of NCO.

Additionally, cases applying the "knows or should have known" standard found in these statutes show liability is imposed where knowledge is either actual or imputed from information that is readily accessible.  What Holmes seeks to do here – namely, impose liability on NCO for failing to conduct an investigation to discover information outside its own records, of which it was unaware, and to which it lacked access, is not contemplated by these statutes. Furthermore, even the Fair Credit Reporting Act (FCRA), the federal statute which regulates furnishing

7

information to credit reporting agencies and which contains *an express requirement to investigate* upon notice of dispute, does *not* require the rigorous investigation Holmes calls for here.

As to Holmes's claim under § 1785.25(a) of the CCRAA, the substance of the claim demonstrates that it actually arises under § 1785.25(c). Subsection (c) specifically requires a furnisher of credit information who reports a disputed debt to a credit reporting agency to give notice the debt is disputed, whereas subsection (a) addresses more generally the furnishing of information that is known to be "inaccurate or incomplete." Since § 1785.25(c) is preempted by the FCRA, Holmes's CCRAA claim fails as a matter of law.

Finally, turning to the undisputed facts of this case, no reasonable jury could find NCO "should have known" of Holmes's dispute with previous collection agencies. The record establishes NCO had no actual knowledge of Holmes's dispute. Neither Holmes nor AT&T ever advised NCO of the dispute. No record of the dispute existed within NCO's account records. Although AT&T maintains a web-based portal known as Oasis through which account information is exchanged, NCO lacked access in Oasis to the records of previous collection agencies. Thus, the notation of Holmes's dispute with a previous agency was not available to NCO in Oasis. Moreover, until Holmes filed his lawsuit and advised of his dispute with a previous agency, NCO did not recognize its access in Oasis

8

was limited in this manner. Given these undisputed facts, no reasonable jury could find NCO should have known Holmes's account was disputed. As the district court found, Holmes has failed to raise a disputed issue of material fact on this point and NCO is entitled to judgment as a matter of law.

## ARGUMENT

**I.    The FDCPA and CCRAA Do Not Impose on Debt Collectors an Affirmative Duty to Conduct an Investigation Prior to Furnishing Account Information to Consumer Credit Reporting Agencies**

The issues on appeal as presented by Holmes presuppose "duties under 15 U.S.C. § 1692e(8) and California Civil Code § 1785.25(a)." (BOA p. 2.) These duties are variously described by Holmes as "a duty on debt collectors to ensure they do not report inaccurate information to credit reporting agencies, and ensure that they [do not] report disputed debts as undisputed" (BOA p. 7-8); "statutory duties on NCO to perform a reasonable investigation of the records of Oasis" (BOA p. 10); "a duty on debt collectors to perform a reasonable investigation to ensure they do not furnish inaccurate or incomplete information to [credit reporting agencies]" (BOA p. 13); and "an affirmative duty to perform a reasonable investigation" (BOA p. 14).  The statutes at issue in this case provide as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ***
>
> (8)    Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
>
> 15 U.S.C. § 1692e.

10

(a)     A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate.

Cal. Civ. Code § 1785.25.

There is nothing in the statutes themselves or in any judicial opinion interpreting the statutes which imposes the duties described by Holmes.  The duties described by Holmes do not appear in the text of either § 1692e(8) or § 1785.25(a), nor elsewhere within the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* or the Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.1, *et seq.* with respect to these sections.  In fact, other than plaintiff's repeated assertions about what a "reasonable debt collector" should do (*see., e.g,* BOA p. 8, p. 9, p. 17, p. 27, p. 32), plaintiff has failed to proffer any legal authority, or expert opinion, to support the conclusory statements that NCO had a heightened duty to reasonably investigate plaintiff's account for a possible dispute.  The reason for this failure is obvious – plaintiff is attempting to create and impose a duty on NCO that is not contemplated under either federal or state law.  For this reason, Holmes's claims fail as a matter of law and the Court should affirm summary judgment in favor of NCO.

**A.    The FDCPA Cause of Action**

**1.    Section 1692e(8) of the FDCPA Does Not Impose on Debt Collectors a Duty to Investigate Prior to Credit Reporting a Debt**

The Ninth Circuit has held a debt collector has no duty of independent investigation under the FDCPA and other courts are in accord. In the context of a claim that a debt collector failed to provide adequate verification of a debt upon the consumer's written dispute pursuant to § 1692g, the Ninth Circuit has held: "the FDCPA did not impose upon [the debt collector] any duty to investigate independently the claims presented by [the creditor]." *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006)  Moreover, the *Clark* court found the debt collector adequately verified the debt when it "obtained information from [the creditor] about the nature and balance of the outstanding bill and provided [the consumer] with documentary evidence in the form of the itemized statement." *Id.*    Holmes's contention that the FDCPA imposes a duty of investigation before credit reporting a debt is at odds with this analysis, which finds no such duty even <u>after</u> the consumer submits a written dispute of the debt directly to the debt collector, triggering an obligation to validate the debt.  To the contrary, the collector is allowed to rely on what is readily obtainable from the creditor.

12

Similarly, the Fourth Circuit has held "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999). The *Chaudhry* court affirmed the lower court's finding that there was "no duty for [the debt collector] to have assembled supporting documentation." *Id.* Moreover, "there is no concomitant obligation to forward copies of bills or other detailed evidence of the debt." *Id.* *See also Poulin v. The Thomas Agency*, 760 F.Supp.2d 151, 160-161 (D. Me. 2011)(collecting cases of "numerous courts" that have held "the FDCPA does not require a debt collector to independently investigate the merit of the debt and that a debt collector can rely on its clients' representations regarding the validity of the debt."); *Slanina v. United Recovery Systems, LP*, 2011 WL 5008367, *3 (M.D. Pa.)("Requiring debt collectors to investigate and verify a debt before collection would create an additional duty not found in the statute's plain language."); *Azar v. Hayter*, 874 F.Supp. 1314, 1317 (N.D. Fla. 1994), *aff'd without opinion*, 66 F.3d 342 (11th Cir. 1995)("No provision of the FDCPA has been found which would require a debt collector independently to investigate the merit of the debt, except to obtain verification, or to investigate the accounting principles of the creditor, or to keep detailed files."); *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991) (finding computer printouts debt collector provided to consumer that informed him of the

13

amounts of his debts, the services provided, and the dates on which they debts were incurred constituted sufficient verification ); *Ducrest v. Alco Collections*, 931 F.Supp 459, 462 (M.D. La. 1996)(holding debt collector may rely on its clients' representations and has no duty to independently investigate claims presented by its clients).

Furthermore, in *Amond v. Brincefield, Hartnett & Associates*, 175 F.3d 1013, 1999 WL 152555 (4th Cir. 1999), the court rejected the plaintiff's efforts to impose on attorney debt collectors "a heightened duty to investigate the validity and amount of the debts they seek to collect." *Id.* at *3. The plaintiff argued these duties derived from the FDCPA and Federal Rule of Civil Procedure 11. *Id.* As the court noted, Rule 11 requires certification "based on a reasonable inquiry" that filed papers "are well grounded in fact, legally tenable, and not presented for an improper purpose." *Id.* Plaintiff claimed "the Rule 11 duty of reasonable inquiry should extend to any activity by a lawyer that constitutes debt collection under the FDCPA, thereby diminishing the ability of lawyer-debt collectors to rely on representations of their clients." *Id.* Citing *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) and *Jenkins v. Heintz*, 124 F.3d 824, 833-834 (7th Cir. 1997), the *Amond* court found "lawyers who regularly engage in consumer debt collection activity are subject to the limitations of the FDCPA, . . . [h]owever they are not subject to any special, higher duty under the FDCPA solely

by virtue of their status as lawyers." *Id.* The court declined to combine Rule 11 with the FDCPA "to create a heightened duty of investigation for lawyer-debt collectors engaging in ordinary debt collection activity." *Id.* Instead, the court recognized the long-standing rule that the FDCPA does not impose a duty to investigate the validity of a debt onto debt collectors. Certainly no such duty of investigation exists for non-lawyer debt collectors such as NCO.

### 2. Authorities Addressing Claims Under § 1692e(8) Demonstrate How "Know or Should Have Known" is Properly Interpreted

Disregarding the above authorities which support the maxim that the FDCPA imposes no duty of investigation onto debt collectors, Holmes arrives at his conclusion that § 1692e(8) imposes the duties he describes, without analysis, by citing to *Rost v. United States*, 803 F.2d 448, 451 (9th Cir. 1986), a case involving the Federal Tort Claims Act, and to the *dissent* in *Shenker v. Baltimore & Ohio RR Co.*, 374 U.S.1, 13, 83 S.Ct. 1667 (1963), a case involving the Federal Employers' Liability Act. Holmes then extrapolates a duty to investigate from the fact § 1692e(8) contains the words "should have known." In doing so, he ignores the text of the FDCPA and the abundant authorities which have analyzed the statutory scheme of the FDCPA and found no such duty.[1]

---

[1] Plaintiff's theory is built upon a series of alleged failures committed by NCO that culminates in the ultimate conclusion that NCO failed to conduct itself as a reasonable debt collector. Though plaintiff does not offer any expert opinion or

Moreover, cases applying § 1692e(8) are instructive and show an investigation to ferret out knowledge of a dispute is not contemplated by the statute. For example, in *Smith v. National Credit Systems, Inc.*, 807 F.Supp.2d 836 (D. Az. 2001), plaintiff Smith orally disputed the debt at issue during his first conversation with debt collector NCS. *Id.* at 839. The NCS employee who spoke with Smith noted his dispute in NCS's account notes, but failed to flag the file as disputed. *Id.* NCS credit reported the account 2½ months later without noting it was disputed. *Id.* at 840. NCS argued its employee's oversight in not flagging the account caused NCS's failure to report the debt as disputed. *Id.* at p. 842. NCS had conceded, however, that Smith disputed the debt with NCS on the first call and that "the disputed nature of the debt was obvious from an examination of [NCS's] collection notes." *Id.* As a result, NCS was put on notice that the debt was disputed, and therefore, was liable under § 1692e(8).

Similarly, in *Gilmore v. Account Management, Inc.*, 2009 WL 2848278 (N.D. Ga. 2009), after receiving two collection letters from debt collector AMI,

---

other authority to support his conclusion that NCO failed to live up to the standard of a reasonable debt collector, or even what that standard is, NCO is alleged to have breached its duties to plaintiff because NCO should have known (1) that disputed accounts were placed for collection by AT&T; (2) that these disputes were noted in the Oasis system; (3) that this information, though present in Oasis, was not accessible to it; (4) that, though unknown to both NCO and HOV, its access in Oasis had been limited by HOV; (5) that it needed to have HOV fix the access limitation; and (6) that it should have investigated thousands of tabs for disputes that it had no reason to suspect even existed. Plaintiff's attempt to create a duty from unsupported assertion upon unsupported assertion should be rejected.

plaintiff Gilmore sent AMI a certified letter disputing the validity of the debt. *Id.* at \*1. AMI's employee signed the return receipt. *Id.* AMI subsequently credit reported the debt without notifying the credit reporting agencies that the debt was disputed. *Id.* at \*2. Accordingly, based on the documented receipt by AMI of the notice of dispute, the court found AMI "should have known the debt was disputed prior to reporting the unpaid debt to the credit reporting agencies." *Id.* at \*7. A violation of § 1692e(8) was found.

Additionally, in *Daley v. A & S Collection Associates, Inc.*, 717 F.Supp.2d 1150 (D. Or. 2010), plaintiff alleged the debt collector A&S violated § 1692e(8) by reporting false information to Equifax. Plaintiff's creditor supplied a debt information form to A&S which accurately "set forth the 'purchase date / last pay date' as '7/25/97; last paymt [sic] 5/4/04.'" *Id.* at 1153. Despite this information, A&S erroneously concluded that the date the debt was incurred was 5/4/04. *Id.* A&S thereafter reported the debt as "'First delinquency: 5/1/2004' and 'Last payment: Not on Record.'" *Id.* While A&S maintained that it reasonably relied on the limited information provided by the creditor, the court found its misinterpretation of the information unreasonable. *Id.* at 1155. The court granted summary judgment for plaintiff, concluding that A&S violated § 1692e(8) "when it communicated credit information to Equifax which it knew or should have known to be false." *Id.*

17

The above cases demonstrate a debt collector can be charged with knowledge of a dispute or inaccuracy that is *readily accessible*, although the dispute or inaccuracy may not be "known" in the sense of being within the debt collector's immediate awareness. As instructed by this authority, a debt collector "should know" of a disputed debt for § 1692e(8) purposes when a dispute is made to the collector, but the information is not properly noted because of some oversight by the collector. Constructive knowledge of a dispute is not imposed, conversely, when the notice of the dispute is not first conveyed to the debt collector.

This was the result in *Gostony v. Diem Corporation*, 320 F.Supp.2d 932 (D.Az. 2003). In *Gostony*, the court denied plaintiff's motion for summary judgment on an alleged § 1692e(8) violation because plaintiff failed to establish defendant should have known of her dispute. *Id.* at 942. There, plaintiff disputed certain "move-out charges" her former landlord sought to collect. *Id.* at 934-935. Plaintiff's father, who shared plaintiff's last name, wrote the collection agency a letter disputing the debt. Defendant conceded someone "claiming to be Plaintiff's father mailed a letter to [the collection agency] disputing the debt." *Id.* at 942. Defendant first credit reported the debt two months after receiving the letter and did not report it as disputed. *Id.* Plaintiff contended that after receiving her father's letter, "Defendants either knew or should have known the debt was

18

disputed." *Id.* Rather than imputing knowledge of plaintiff's dispute to the debt collector based on the letter, or imposing a duty of investigation on the collection agency as a result of its receipt of the letter, the court found questions of fact remained as to "whether Defendants were aware of who 'Henry Gostony' was and whether they could have known he was authorized to act on Plaintiff's behalf." *Id.*

### 3. Holmes Must Show NCO Had Actual or Constructive Knowledge of His Dispute

Contrary to Holmes's contention that the words "should have known" impose a duty of investigation on a debt collector, the above cases illustrate the principle that "this 'knows or should know' standard . . . depends solely on the debt collector's *knowledge that the debt is disputed*, regardless of how or when that knowledge is acquired." *Brady v. Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998) (emphasis added). Here, we must not lose sight of the fact NCO had *no actual knowledge* of Holmes's dispute. What Holmes argues for goes far beyond the scope of NCO's knowledge and seeks to impose liability on NCO for failing to recognize that it *lacked knowledge* of Holmes's dispute, and *lacked access* to records that would have imparted knowledge of the dispute. Yet, as Holmes concedes, he "must prove constructive knowledge" to prevail on his claim. (BOA p. 15, fn 4).

Case authority as well as Federal Trade Commission[2] commentary instruct that liability under § 1692e(8) turns on the debt collector's knowledge. As the *Clark* court noted "Congress took care to require an element of knowledge or intent in certain portions of the FDCPA where it deemed such a requirement necessary." *Clark, supra*, 460 F.3d at 1176, fn 11, citing *Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355, 1362 (S.D. Fla. 2000).   Provisions requiring knowledge include those which contain the "known or which should be known" standard found in § 1692e(8). *See Id.*   Furthermore, "the relevance of the portion of § 1692e(8) [at issue here] – 'the failure to communicate that a disputed debt is disputed' – is rooted in the basic *fraud law principle* that, if a debt collector elects to communicate credit information about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008)(quotation marks and original emphasis omitted; emphasis added.)   Thus, under fraud law principles, *knowledge* of the dispute is essential, and may not be omitted.   This interpretation is confirmed by the Federal Trade Commission's December 1988 Staff Commentary on § 1692e(8):

> 1.   Disputed debt.  If a debt collector knows that a debt is disputed by the consumer, either from receipt of written

---

[2] The Federal Trade Commission is charged with administering the FDCPA. *Clark, supra*, 460 F.3d 1162, 1169, fn 3.

notice ([§ 1692g]) or other means, and reports it to a credit bureau, he must report it as disputed.

2. Post-report dispute. When a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported.

FTC Staff Commentary, 53 Fed.Reg 50097-02, 50106 (Dec. 13, 1992), followed in *Wilhelm, supra*, 519 F.3d at 418. Notably, *constructive knowledge* is not even referenced in the commentary. In sum, these authorities underscore the need for a plaintiff to establish the debt collector's knowledge of the disputed status of the debt through some means. Holmes is not arguing NCO obtained knowledge of his dispute through any means. Rather he is faulting NCO for not discovering, until he filed his lawsuit, that NCO lacked access to records through which it *could have* obtained knowledge of disputed debts.

### 4. The FDCPA Does Not Specifically Regulate Furnishing Information to Credit Reporting Agencies and Statutes that Provide Such Regulation Do Not Impose the Duty of Investigation Envisioned by Holmes

Finally, it should be noted that §1692e(8) does not specifically regulate furnishing information to credit reporting agencies, despite Holmes's assertions to the contrary (i.e., that the statute imposes "a duty on debt collectors to ensure they do not report inaccurate information to credit reporting agencies, and ensure that they [do not] report disputed debts as undisputed" (BOA p. 7-8) and "a duty on debt collectors to perform a reasonable investigation to ensure they do not furnish

21

inaccurate or incomplete information to [credit reporting agencies]" (BOA p. 13)). Moreover, even the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, the statute that *does* regulate such conduct and provides for a reasonable investigation, does not impose the rigorous pre-reporting investigation duties Holmes seeks to impose on NCO.

"Under the federal statutory scheme, the FCRA governs the conduct of credit reporting agencies and furnishers of information, while the FDCPA governs the conduct of debt collectors." *Nelson v. Equifax Information Services, LLC*, 522 F.Supp.2d 1222, 1229 (C.D. Cal. 2007). As in the case of NCO, a "debtor collector" under the FDCPA may also be a "furnisher" under the FCRA. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154, fn 7 (9th Cir. 2009).

The FCRA imposes a duty of investigation on furnishers of information which arises *only when* a furnisher receives notice of a consumer's dispute regarding the accuracy of information the furnisher has supplied to a consumer credit reporting agency ("CRA"). 15 U.S.C. § 1681s-2(b)(1); *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002). A furnisher's duty of investigation under the FCRA is triggered *only after* the consumer notifies the CRA of the dispute concerning what the furnisher has reported, *and* the CRA then notifies the furnisher. *Id.* (Emphasis added.) "Under the FCRA, [a furnisher] may be held liable to a consumer only if it receives notice of disputed information

22

from a [CRA] and fails to properly conduct an investigation and report the results of its investigation to the [CRA]." *Daley v. A& S Collection Associates, Inc.*, 717 F.Supp.2d 1150, 1154-1155 (D. Or. 2010)

When a CRA notifies a furnisher of a consumer's dispute, the furnisher must, among other things, "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). The Ninth Circuit has held "the furnisher's investigation pursuant to § 1681s-2(b)(1)(A) may not be unreasonable." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009). The reasonableness of the furnisher's investigation is evaluated with respect to the notice of dispute provided by the CRA which must contain "all relevant information regarding the dispute that the [CRA] has received from the consumer. § 1681i(a)(2)(A). As the *Gorman* court noted:

> It is from this notice that the furnisher learns the nature of the consumer's challenge to the reported debt, and it is the receipt of this notice that gives rise to the furnisher's obligation to conduct a reasonable investigation. The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.
>
> *Gorman, supra*, 584 F.3d at 1157.

Several cases are illustrative of what constitutes a reasonable investigation as a matter of law where a statute – *unlike* the FDCPA – imposes an obligation to

23

investigate.  In *Gorman*, the court affirmed summary judgment for furnisher MBNA and found MBNA's investigation – consisting of a review of its account notes, which documented its previous investigation of plaintiff's dispute with a creditor, and internal fraud department records – was reasonable in light of the content of the notices of dispute it received. *Id.* at 1157.  The notices of dispute MBNA received stated variously: "Claims company will change.  Verify all account information." *Id.*; "Disputes present/previous Account Status History. Verify accordingly." *Id.* at 1158; "Consumer claims account take-over fraudulent charges made on account.  Verify Signature provide or confirm complete ID." *Id.*; "Claims inaccurate information.  Did not provide specific dispute.  Provide complete ID and verify account information." *Id* at 1159.  The *Gorman* court concluded a jury could not find MBNA's investigation was unreasonable. *Id.* at 1157, 1161.

In *Westra*, although the consumer alleged identity theft and fraud in his dispute letter to Trans Union, the notice of dispute Trans Union sent to the furnisher merely indicated the basis for the consumer's dispute was that "the account did not belong to him."  *Westra, supra*, 409 F.3d at 827.  The court affirmed summary judgment for the furnisher and concluded the furnisher's investigation – which consisted of verifying the consumer's name, address and

date of birth – "was reasonable given the scant information it received regarding the nature of [the consumer's] dispute." *Id.*

In *Farren v. RJM Acquisition Funding, LLC*, 2005 WL 1799413 (E.D.Pa.), plaintiff claimed he was the victim of identity theft and that inaccurate charges were reflected on his credit report. The furnisher, a debt buyer and owner of the account disputed by plaintiff, received a notice that articulated the dispute as "not mine-provide complete ID & Company/Collect Agency Name (D)." *Id.* at *5. In response, the furnisher compared "identity factors" in the notice to those in its account records and reviewed its account notes to determine whether they contained any indication it had obtained inaccurate information from the original creditor. *Id.* at *2. Based on this investigation the furnisher verified the accuracy of account as previously reported. Relying on *Westra*, the *Farren* court found this "prompt review of all relevant information provided by the credit reporting agency and its own records" was, as a matter of law, a reasonable investigation based on the information provided in the dispute notice. *Id.* at *7. In declining to "impose duties upon a data furnisher that Congress did not see fit to impose," the *Farren* court observed:

> The statute does not require . . . any data furnisher to take extraordinary means to investigate and *discover disputed information* but rather calls for a more passive investigation where the data furnisher is determining only that the information provided to it matches the information in its records.

25

*Farren, supra*, at *7 (emphasis added).

These cases demonstrate that even where a duty of investigation has been expressly imposed by statute, triggered only by direct notice to the debt collector that the information it has previously furnished is disputed, the investigation deemed reasonable as a matter of law is less rigorous than what Holmes would have this Court require of NCO based on the "should have known" language of § 1692e(8). In other words, a statute (the FCRA) that explicitly imposes a duty of investigation does not carry the heightened burden of investigation Holmes seeks to impose on NCO pursuant to a statute (the FDCPA) that is notably silent on any investigatory requirements.

In fact, Holmes would have NCO held liable for failure to "discover disputed information" of which it had no knowledge. This view finds no support in the statute itself or in the cases interpreting it. Finally, the fact that Congress expressly imposed a duty of investigation in crafting the FCRA supports the view that, had Congress intended to create a duty of investigation in the FDCPA, it would have done so more explicitly than through use of the words "should have known" in § 1692e(8). The lack of any express reference to a duty of investigation in the FDCPA with respect to § 1692e(8) shows Congress did not intend to create one. NCO did not violate the FDCPA because it did not know, and could not have known, of Holmes' dispute at the time it credit reported the account. NCO was not

26

required to perform an investigation to search for a dispute when it had no reason to suspect such a dispute might exist.

**B.    The CCRAA Cause of Action**

    **1.    Section 1785.25(a) of the CCRAA Does Not Impose a Duty to Investigate Prior to Credit Reporting a Debt**

The arguments and authorities above, showing that the words "which is known or which should be known" in § 1692e(8) of the FDCPA cannot reasonably be construed to impose a duty of pre-reporting investigation on NCO, apply equally to the words "knows or should know" appearing in § 1785.25(a) of the CCRAA.  Those arguments are incorporated herein.

Additionally, there is no express duty to investigate contained within § 1785.25(a); although, by contrast, such a requirement *is* contained within § 1785.25(f) of the CCRAA.  Section 1785.25(f) requires a person who has furnished information to a credit reporting agency to conduct an investigation upon receipt of notice from the credit reporting agency that the information it has provided is in dispute.  Cal. Civ. Code §§ 1785.25(f); *see also* 1785.16(a).  This duty to investigate expressly stated in the CCRAA was not triggered because NCO never received notice from any credit reporting agency that Holmes disputed his debt.  Moreover, all provisions of the CCRAA, except § 1785.25(a), are preempted by the FCRA so liability under § 1785.25(f) cannot be at issue here.  *See* 15 U.S.C. § 1681t(b)(1)(F)(ii); *Gorman, supra*, 584 F.3d at 1169.

27

> 2.  **Section 1785.25(a) of the CCRAA Does Not Regulate Credit Reporting a Disputed Debt Without Noting it as Disputed and the Provision Which Regulates Such Conduct is Preempted by the FCRA**

Perhaps more fundamentally, unlike § 1692e(8) of the FDCPA, § 1785.25(a) of the CCRAA does not include *any* reference to liability for failing to communicate that a disputed debt is disputed. Indeed, § 1785.25(a) references only "incomplete or inaccurate" information. By contrast, § 1785.25(c) of the CCRAA specifically addresses handling disputed debts, as follows:

> So long as the completeness of any information on a specific transaction or experience furnished by any person to a consumer credit reporting agency is subject to a continuing dispute between the affected consumer and that person, the person may not furnish the information to any consumer credit reporting agency without also including a notice that the information is disputed by the consumer.

Cal. Civ. Code § 1785.25(c).

A claim of the type Holmes has asserted against NCO – an alleged violation due to NCO reporting a debt on his credit report without noting it as disputed – is actually a claim arising under § 1785.25(c), not § 1785.25(a). *Wang v. Asset Acceptance, LLC*, 681 F.Supp.2d 1143 (N.D. Cal 2010), motion for relief from judgment denied 2010 WL 4321565. The reasoning of the *Wang* case is applicable here and results in pre-emption of Holmes's CCRAA claim.

As a federal court interpreting a California statute, the *Wang* court noted it must look "first to the words of the statute, and the language of a specific section

28

must be construed in the context of the larger statutory scheme of which it is a part." *Id.* at 1147. Further "[s]tatutory provisions should not be interpreted in a manner that would render them superfluous." *Id.* The court found the conduct at issue there, as here, *i.e.*, the "obligation to notify CRAs of disputed debts[,] is clearly and unambiguously addressed by the California legislature in section 1785.25(c) of the CCRAA." *Id.* at 1147-1148. The court concluded:

> Hence, the general obligation in section 1785.25(a) not to furnish CRAs with incomplete or inaccurate information cannot have been intended to include the obligation to notify CRAs of disputed debts. Otherwise, section 1785.25(c) would be superfluous and unnecessary.

*Id.* at 1148. The court rejected the contention that § 1785.25(a) "includes a duty to notify CRAs when consumers dispute debts." *Id.*, citing *Van Horn v. Watson*, 45 Cal.4th 322, 333, 86 Cal.Rptr.3d 350, 197 P.3d 164 (2008)(rejecting broad reading of statute that would render other statutes unnecessary surplusage). The *Wang* court rejected plaintiff's argument "that it is unreasonable to interpret section 1785.25(a) of the CCRAA in a manner that would shield the very misconduct the legislature intended to prohibit," finding the legislature "intended to require furnishers of information to CRAs to notify the CRAs if the consumer disputes a debt" and did so in § 1785.25(c). *Id.*

Through the FCRA, Congress has pre-empted all but § 1785.25(a) of the CCRAA. *See* 15 U.S.C. § 1681t(b)(1)(F)(ii); *Gorman, supra*, 584 F.3d at 1169. Noting Congress's decision to do so, the *Wang* court observed the FCRA provides

29

no private right of action under § 1681s-2(a)(3), "a provision almost identical" to § 1785.25(c) of the CCRAA  *Wang, supra*, at 1148.  "Therefore, by preempting similar state laws, Congress intended for this duty to provide notice when consumers disputed their debts to be enforced by federal and state authorities, not private citizens." *Id.*   The court granted defendant's motion to dismiss without leave to amend.

Moreover, in denying plaintiff's motion for relief from judgment of dismissal, the *Wang* court rejected the argument that the decision was inconsistent with the Ninth Circuit's construction of similar language in *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009).  *Wang v. Asset Acceptance, LLC*, 2010 WL 4321565, *2-3  (N.D. Cal.).  The *Gorman* court held plaintiff had a private right of action under § 1681s-2(b) of the FCRA to challenge a furnisher's failure to note his account as disputed after conducting an investigation following receipt of a notice of dispute from the CRA.  *Gorman, supra*, 584 F.3d at 1162.  In rendering its decision, the *Gorman* court noted, "in addition to requiring that a furnisher conduct a reasonable investigation of a consumer dispute, § 1681s-2(b) also requires a creditor, upon receiving notice of such dispute, to both report the results of the investigation and, if the investigation finds that the information is incomplete or inaccurate, report those results to CRAs." *Id.*

Wang argued the use of similar "incomplete or inaccurate" wording in both § 1785.25(a) of the CCRAA and § 1681s-2(b) of the FCRA supported the interpretation that a claim under § 1785.25(a) based on a failure to report a disputed debt as disputed was viable. The court disagreed, finding plaintiff's reliance on *Gorman* misplaced. *Wang, supra*, at *3. Although the two sections contained similar words, the obligations under each statute arises under different circumstances and the statutes are otherwise worded and structured differently. *See id.* As the *Wang* court observed,

> [n]othing in the language of Section 1785.25(a) specifically addresses disputes, while Section 1785.25(f) governs how furnishers must investigate and respond to CRAs regarding disputes received from CRAs, and Section 1785.25(c) governs how furnishers must report disputes. In contrast, Section 1681 s-2(b) of the FCRA . . . imposes a duty to correct "inaccurate or incomplete" information after a furnisher has conducted an investigation of the dispute.

> *Id.*

The court denied the motion for relief from the dismissal of the § 1785.25(a) claim, holding that "under California rules of statutory interpretation, the general obligation in Section 1785.25(a) not to furnish CRAs with incomplete or inaccurate information cannot have been intended to include the obligation to notify CRAs of disputed debts because otherwise Section 1785.25(c) would be superfluous and unnecessary." *Id.* at *4.

In addition to finding § 1785.25(a) does not impose a duty of investigation on furnishers of information such as NCO, this Court should also find Holmes's claim actually arises under § 1785.25(c) and is therefore pre-empted by the FCRA.

## II.   NCO is Entitled to Judgment as a Matter of Law on the Claims NCO Breached Duties Under 15 U.S.C. § 1692e(8) and California Civil Code § 1785.25(a) as Described in Holmes's Issues on Appeal

The issues on appeal Nos. 1 and 2 identified by Holmes turn on whether NCO "breached its duties under 15 U.S.C. § 1692e(8) and California Civil Code § 785.25(a)" by:  "reporting an account on Holmes's credit report as delinquent though NCO never reviewed, or even attempted to review, the original creditor's records which showed Holmes's dispute of such account" (Issue No. 1) or because "it failed to ensure it had access to the original creditors' records of account disputes before reporting the accounts to credit reporting agencies" (Issue No. 2).

The unequivocal answer to the questions posed in each of these issues is, "No", for the following reasons:  ***First***, as set forth above in Section I., there are no "duties" of the type Holmes describes in his brief  under either 15 U.S.C. § 1692e(8) or California Civil Code § 1785.25(a);  ***Second***, the factual premise of both issues lacks support in the record;  ***Third***, the statutes at issue do not require a debt collector to "review, or attempt to review, the original creditor's records";  ***Fourth***, there is no liability for "reporting an account on Holmes's credit report as delinquent."   The liability, if any, comes from reporting a debt as delinquent

without communicating it is disputed, *provided* the dispute is known or should be known; **_Fifth_**, the statutes at issue do not require a debt collector "to ensure it had access to the original creditor's records of account disputes before reporting the accounts to credit reporting agencies." If Holmes' appeal turns on the allegations framed by Issue Nos. 1 and 2, NCO is entitled to judgment as a matter of law.

## III.  No Reasonable Trier of Fact Could Have Found NCO Should Have Known Holmes's Account Was Disputed

Turning to the issue which is generally understood to control claims under 15 U.S.C. § 1692e(8) and/or California Civil Code § 1785.25(a) – whether NCO "should have known" that his account was disputed and/or that information it reported was "incomplete or inaccurate" – NCO is entitled to judgment as a matter of law.  To paraphrase the *Rost* decision cited by Holmes, under the objective standard of constructive knowledge, the question is: would a reasonable debt collector in NCO's circumstances be aware of Holmes' dispute.  *Rost v. United States*, 803 F. 2d 448, 451 (9th Cir. 1986)(articulating the standard in the context of Tort Claims Act litigation for personal injury).  The unequivocal answer here, as well, is, "No."

To defeat NCO's motion for summary judgment, Holmes was required to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  This he could not do.  Despite

Holmes's argument that the contents of the Oasis user manual should have put NCO on notice of his dispute, the undisputed material facts establish NCO had no means of learning about Holmes's dispute concerning his AT&T account prior to credit reporting the debt. Moreover, the above cases applying § 1692e(8) show a more direct path to knowledge of a dispute is required than the circuitous route which Holmes contends NCO was duty bound to follow.

The undisputed facts show that neither Holmes nor AT&T provided NCO with notice that the account was disputed. To the extent Holmes disputed his account with another collection agency, NCO was unable to access that information in Oasis until March 14, 2011 – *months after* AT&T recalled the account and after NCO deleted the credit reporting associated with the account. Under these circumstances, Holmes cannot establish the required "known" or "should be known" elements of his claim.

The undisputed facts of this case demonstrate 3 reasons why there is no reasonable basis upon which NCO should be charged with knowledge it did not have:

***First***, based on the information accessible to NCO in Oasis, there would be no reason for NCO to suspect additional information existed outside of what was visible.  NCO could see the Dispute Tab, but it appeared empty.  The access limitation in Oasis only came to light as the result of information NCO learned in

connection with Holmes's complaint.  Until March 2011, NCO was not aware that its access to Oasis was limited or that information of earlier disputes on some accounts was being maintained in areas that were inaccessible to NCO.  Thus, based on the content of Oasis records accessible to NCO, there is no reasonable basis on which NCO should have known Holmes's account was disputed.

**_Second_**, in NCO's experience handling debt collection for AT&T since 1998, as a matter of general practice AT&T did not place disputed accounts for collection.  Thus NCO's long-standing collection history with AT&T provides no support for the contention that NCO should have known his account was disputed.

**_Third_**, according to HOV Services, which operates Oasis, only 1,375 AT&T consumer accounts placed with NCO for collection were noted as disputed in Oasis.  This is an extremely small fraction of the 343,773 accounts which NCO credit reported – one-third of 1% – and an infinitesimal part of the 768,191 total WCT accounts AT&T placed with NCO for collection.  The fact that the actual number of disputed accounts is so small is consistent with NCO's evidence that as a matter of general practice AT&T did not place disputed accounts for collection and undermines Holmes's claim that NCO should have known his account was disputed.

These 3 factors independently demonstrate that NCO's failure to know that Holmes's account had previously been disputed was both reasonable and logical.

35

And Holmes has been unable to adduce any evidence to support the theory that NCO should have known of the dispute. He relies on the Oasis user manual which notably has a release date of October 2010 – eight months after NCO credit reported Holmes's account. (ER 75, 88.) While the Court is required to draw *reasonable* inferences in the light most favorable to Holmes, Holmes seeks to have the Court draw inferences that are not tethered to any facts in the record. For example, Holmes states a reasonable debt collector upon attempting to review its predecessors' Dispute Tabs, "would have then become aware of the fact that its access to Oasis was restricted, and finally would have had HOV restore full access before it reported AT&Ts accounts to CRA." (BOA p. 17.) Holmes fails to explain how this could be the case. In other words, how is one to perceive the empty Dispute Tabs should instead contain data of a dispute? The Dispute Tabs themselves are visible regardless of whether a dispute has been recorded.

If anything, the fact that a Dispute Tab was shown but was empty undermines the claim that NCO had constructive notice of his dispute. Stated differently, Oasis was configured in such a way that it appeared affirmatively to NCO that there was no dispute recorded on the account. NCO could look, but could never find any record of the dispute. And without some reason to suspect there was a dispute, NCO cannot be charged with constructive notice of a dispute.

Additionally, Holmes asserts "NCO violated the FDCPA and CCRAA

36

because it did not review the pertinent records in Oasis, not because its access to Oasis was restricted." (BOA p. 18.) This is nonsensical and ignores the fact the pertinent records could not be reviewed due to the access restriction. Moreover, Holmes states his "dispute is plainly visible in the Secondary Dispute Tab." (BOA p. 18) True, but only if one has access to previous collection agencies' notations – it is undisputed that NCO did not have such access until after Holmes filed his Complaint. In other words, Holmes's arguments concerning NCO's failure to learn of his dispute are based on a world in which Oasis functions *as it should*, not as it did here.

As to the argument concerning "Business Type or Account Type" buttons, Holmes seems to be saying, in effect – and without any support in the record – that NCO looked in the *wrong* place. The implication being that if NCO only looked in the *right* place, it could have seen the dispute. This is not the case. The uncontested evidence is clear that NCO could not view any dispute information from previous collection agencies in any area in Oasis to which it had access. (ER 226-227, 230-243, 245.) After the filing of this lawsuit, and upon first learning of its access restrictions, NCO worked with HOV to investigate and remedy the access limitations on NCO User IDs. Unbeknownst to NCO, these restrictions prevented NCO users from having full access to information in Oasis, including documentation of disputes by previous collection agencies. (ER 226-227, 230-243,

37

245.) There is no evidence that NCO was aware of these access restrictions at any time prior to the filing of this lawsuit.

Moreover, the Business Type buttons are of no consequence here because NCO could not view what was behind those buttons. (ER 226-227, 230-243, 245.) Regardless of how the Business Type buttons operate, since NCO lacked access to the account history of previous agencies prior to March 14, 2011, NCO could not have obtained any information through their use. Due to data access limitations in Oasis, an independent, web-based portal operated *not by NCO*, but by HOV, NCO could not see the information contained in these records.

Holmes contends, "NCO acted unreasonably because it did not check parts of Oasis where consumer disputes could be found." (BOA p. 26)  In Holmes's view, looking at the account history in Oasis – where collection activity by previous agencies and notations of disputes are maintained – satisfies the duty of a reasonable investigation.  But the undisputed evidence shows NCO could not view any account data from previous collectors in Oasis until March 14, 2011.  Thus, even if NCO acted in accord with what Holmes considers reasonable conduct, knowledge of his dispute could not have been imparted to NCO.  In sum, while Holmes makes repeated, unsupported assertions that NCO failed to look in Oasis, even if there was support for that proposition in the record, a jury could not return a verdict that looking up the account history in Oasis would have revealed

38

Holmes's dispute to NCO. Such information was unavailable to NCO until March 14, 2011, when NCO's access limitation was remedied.

Seemingly recognizing that NCO did not have the ability to learn of his dispute under the configuration of the Oasis system at the time, Holmes next contends that a reasonable investigation should have disclosed the access limitations themselves, which then would have allowed HOV to restore access and NCO to learn of his dispute. (BOA p. 27.) This argument misses the mark for 2 reasons. First, it attempts to create liability not for NCO's alleged failure to act in accordance with knowledge of Holmes's dispute, but for NCO's failure to recognize NCO User IDs were not given access in Oasis, a third party's web portal, to other collection agencies' account records residing there, which – had they been visible to NCO – would have put NCO on notice of Holmes's dispute. Such an obligation is of Holmes's own making and is not found in the statutes at issue in this case. There is simply no evidence to support the claim that NCO should have known that it was not being given access to the whole picture in Oasis.

Second, the information apparent to NCO under the limited access configuration *that actually existed* confirmed what NCO had come to expect from AT&T – namely, the placement of undisputed accounts. Again, less than one-third of 1% of the total number of AT&T consumer accounts that were credit reported by NCO had actually been disputed. Years of history with AT&T confirmed that

39

very few accounts are disputed.  NCO reasonably concluded based on the entirety of the information available to it that Holmes had not disputed the account.  NCO certainly did not know, and could not have known, that Holmes had disputed the account earlier with another collection agency.  A jury could not find otherwise.

## IV.    Holmes Did Not Comply With the Requirements of FRCP 56(d)

Holmes contends the district court erroneously failed to address his "motion for additional discovery under Rule 56(d)."  (BOA p. 30.)  The record clearly shows, however, that Holmes never made a motion for additional discovery under Rule 56(d).  Rule 56(d) provides, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer considering the motion or deny it, or take other action.

Holmes's opposition to NCO's summary judgment motion contained a section entitled: "If the Court Finds that Holmes has not Presented Enough Evidence to Deny the Motion, the Court Should Continue the Motion to Give Homes an Opportunity to Gather Such Evidence." (ER 62.)   Holmes stated within that section: "Although Holmes contends that there is more than enough evidence to defeat the Motion, if the Court disagrees . . . , then Holmes respectfully asks to continue the Motion to provide him additional time to obtain such discovery. (ER 62.)  In his declaration in support of Holmes's opposition to NCO's summary

judgment motion, Holmes's counsel reiterated that "based on the foregoing evidence cited in this Declaration, Holmes believes there is an adequate basis to deny NCO FS's Motion for Summary Judgment."  (ER 72.)  In other words, rather than asking for additional time to conduct discovery, Holmes affirmatively stated he had enough evidence to justify his position.

"A party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1567 (Fed. Cir. 1987).[3] Holmes did not set out reasons for his need for additional discovery; to the contrary, he affirmatively stated that in his view he had sufficient evidence to defeat the motion.

Simply put, Holmes did not comply with Rule 56(d).  The district court did not err in disregarding Holmes's bid for another try if the *district court* determined Holmes had not developed enough evidence to justify his position.  Holmes was required to make that determination *on his own*, and then, by declaration or affidavit showing why he believed he needed more evidence, seek the relief Rule 56(d) provides.  He failed to do so.  It would be inappropriate to allow Holmes to

---

[3] Fed.R.Civ.P. 56(f) has since been amended and re-codified as Rule 56(d).  *See Fed.R.Civ.P. 56 advisory committee's note* (2010 amendments) ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).)

"try again" in his effort to support his position.  *Hayes v. North State Law Enforcement Officers Ass'n*, 10 F.3d 207, 215 (4th Cir. 1993).

## V.    Conclusion

The undisputed facts of this case establish that NCO had no actual or constructive knowledge that Holmes's AT&T account was disputed when NCO credit reported the debt.  Consequently, NCO cannot be held liable under the 15 U.S.C. § 1692e(8) or Cal. Civ. Code § 1785.25(a).  As a result, NCO is entitled to summary judgment as a matter of law and respectfully requests this Court affirm the decision of the district court.

Dated: April 2, 2012              By: _s/   David Israel_____

David Israel, Esq. (LSB 7174)
*Admitted pro hac vice*
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3850 N. Causeway Blvd., Ste. 200
Metairie, LA  70002-7227
Tel:   504/828-3700
Fax:   504/828-3737
disrael@sessions-law.biz

Debbie P. Kirkpatrick, Esq. (SBN 207112)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
1545 Hotel Circle South, Suite 150
San Diego, CA  92108-3426
Tel:   619/758-1891
Fax:   619/296-2013
dkirkpatrick@sessions-law.biz

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses a proportional typeface and 14-point font, and contains 9,712 words.

Dated: April 2, 2012          By: s/ David Israel

David Israel, Esq. (LSB 7174)
*Admitted pro hac vice*
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002-7227
Tel: 504/828-3700
Fax: 504/828-3737
disrael@sessions-law.biz

Debbie P. Kirkpatrick, Esq. (SBN 207112)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
1545 Hotel Circle South, Suite 150
San Diego, CA 92108-3426
Tel: 619/758-1891
Fax: 619/296-2013
dkirkpatrick@sessions-law.biz

## STATEMENT OF RELATED CASES

Appellee here certifies that, to Appellee's knowledge, there are no cases or appeals pending before this Court related to the present appeal.

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2012, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/   Kirstin Largent