Docket No. 11-56969

*In the*

# United States Court of Appeals

*for the*

# Ninth Court

HAROLD HOLMES, an individual, on his own behalf
and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

v.

NCO FINANCIAL SYSTEMS, INC., a Pennsylvania corporation,

*Defendant-Appellee.*

*Appeal from the United States District Court
for the Southern District of California
No. 10cv2543-H (RBB)
The Honorable Marilyn L. Huff*

## APPELLANT'S REPLY BRIEF

DAVID C. PARISI, ESQ.
SUZANNE HAVENS BECKMAN, ESQ.
AZITA MORADMAND, ESQ.
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 Telephone
(818) 501-7852 Facsimile

ETHAN PRESTON, ESQ.
PRESTON LAW OFFICES
21001 North Tatum Boulevard
Suite 1630-430
Phoenix, Arizona 85050
(480) 269-9540 Telephone
(866) 509-1197 Facsimile

*Attorneys for Plaintiff-Appellant, Harold Holmes*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................1

II.   THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S RULING ...................................................................................4

    A.    A Reasonable Debt Collector Would Not Have Reported AT&T's Account Before It Had Access to and Reviewed Its Predecessors' Dispute Tabs..............................................5

    B.    The Fact that NCO's *Own* Dispute Tab Was Empty Is Irrelevant ................................................................7

    C.    The OASIS Manual Put NCO on Notice That It Needed to Review Its Predecessors' Dispute Tabs .................................8

    D.    The Record Does Not Support NCO's Argument that It Had No Reason to Believe AT&T Did Not Assign NCO Disputed Accounts ..........................................................9

III.  NCO'S NEW ARGUMENTS ARE WRONG ON THE MERITS...............10

    A.    Common Law Principles Control the Meaning of "Should Be Known" in the FDCPA .......................................10

    B.    Under the Common Law, the Phrase "Should Know" Implies a Duty to Perform a Reasonable Investigation ........................12

    C.    Absence of a Duty to Investigate Would Tend to Frustrate the Statutory Purposes Behind the FDCPA and CCRAA........................13

    D.    NCO's Investigation Was Not Reasonable ........................................15

    E.    NCO's Authorities Do Not Construe the Phrase "Should Be Known" in FDCPA Section 1692e(8)................................16

        1.    NCO's Cases Construing Verification Requirement Under FDCPA Section 1692g(b) Are Inapposite ....................18

        2.    The FTC Does Not Have Authority to Write the Phrase "Should Be Known" Out of Section 1692e(8) ........................20

        3.    The FCRA Does Not Limit NCO's Duties Under the FDCPA..................................................21

    F.    The FCRA Does Not Preempt Holmes's CCRAA Claim..................22

        1.    Any "Incomplete or Inaccurate" Credit Information Is Necessarily Disputed ..............................................23

2.    The Plain Meaning of "Incomplete or Inaccurate" Includes the Failure to Report a Dispute ...................................24

3.    The Plain Meaning of the Words "Should Know" in Section 1785.25(a) Includes a Duty to Investigate ..................26

4.    The FCRA Did Not Impliedly Restrict the Plain Meaning of the Phrase "Incomplete or Inaccurate" in CCRAA Section 1785.25(a) ....................................................................27

5.    The Holding in *Wang* Frustrates the Statutory Intent of Section 1785.25(a) ....................................................................31

6.    CCRAA Section 1785.25(a) Does Not Impose a Different Prohibition Than FDCPA Section 1692e(8) .............33

IV.   CONCLUSION.............................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*999 Corp. v. C.I.T. Corp.*
   776 F.2d 866 (9th Cir. 1985) ...............................................................8

*Altria Group, Inc. v. Good*
   555 U.S. 70 (2008)..................................................................29, 31

*Azar v. Hayter*
   874 F. Supp. 1314 (N.D. Fla. 1994) ...........................................18, 19

*Bates v. Dow Agrosciences LLC*
   544 U.S. 431 (2005)...........................................................29, 31, 33

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*
   489 U.S. 141 (1989)...................................................................30

*Bottoni v. Sallie Mae, Inc.*
   No. 10-03602, 2011 WL 635272 (N.D. Cal. Feb. 11, 2011)..............34

*Brady v. Credit Recovery Co.*
   160 F.3d 64 (1st Cir. 1998)..........................................................17

*Burlington N. & Santa Fe Ry. Co. v. United States*
   556 U.S. 599 (2009)...................................................................11

*Camacho v. Bridgeport Fin. Inc.*
   430 F.3d 1078 (9th Cir. 2005) .....................................................21

*Carvalho v. Equifax Info. Servs., LLC*
   629 F.3d 876 (9th Cir. 2010) .......................................................24

*Chaudhry v. Gallerizzo*
   174 F.3d 394 (4th Cir. 1999) .................................................18, 19

*Clackamas Gastroenterology Associates, P. C. v. Wells*
   538 U.S. 440 (2003)...................................................................11

*Clark v. Capital Credit & Collection Servs., Inc.*
  460 F.3d 1162 (9th Cir. 2006) ...................................................................passim

*Daley v. A & S Collection Assocs., Inc.*
  717 F. Supp. 2d 1150 (D. Or. 2010) ............................................................16, 21

*El-Aheidab v. Citibank (South Dakota, N.A.*
  No. 11-5359, 2012 WL 506473 (N.D.Cal. Feb. 15, 2012)................................34

*Fox v. Citicorp Credit Servs., Inc.*
  15 F.3d 1507 (9th Cir. 1994) .....................................................................18, 20

*Freightliner Corp. v. Myrick*
  514 U.S. 280 (1995)...........................................................................................30

*Gilmore v. Account Mgmt., Inc.*
  No. 08-1388, 2009 WL 2848278 (N.D.Ga., Apr. 27, 2009) .............................16

*Gonzales v. Arrow Fin. Servs., LLC*
  660 F.3d 1055 (9th Cir. 2011) ...........................................................................14

*Gorman v. Wolpoff & Abramson, LLP*
  584 F.3d 1147 (9th Cir. 2009) ...................................................................passim

*Gostony v. Diem Corp.*
  320 F. Supp. 2d 932 (D. Ariz. 2003) ...........................................................16, 17

*Graziano v. Harrison*
  950 F.2d 107 (3rd Cir. 1991) .............................................................................18

*Guerrero v. RJM Acquisitions LLC*
  499 F.3d 926 (9th Cir. 2007) .............................................................................14

*Guimond v. Trans Union Credit Info. Co.*
  45 F.3d 1329 (9th Cir. 1995) .............................................................................24

*Heintz v. Jenkins*
  514 U.S. 291 (1995)...........................................................................................20

*Hunter v. Philip Morris USA*
  582 F.3d 1039 (9th Cir. 2009) ...........................................................................30

*In re Software Toolworks Inc.*
  50 F.3d 615 (9th Cir. 1994) ................................................................2

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*
  130 S. Ct. 1605 (2010) ....................................................................15

*Johnson v. MBNA Am. Bank, NA*
  357 F.3d 426 (4th Cir. 2004) ...........................................................22

*Lockwood v. Conagra Foods, Inc.*
  597 F.Supp.2d 1028 (N.D. Cal. 2009) ..............................................30

*Medtronic, Inc. v. Lohr*
  518 U.S. 470 (1996)...........................................................29, 30, 31

*Moscona v. Cal. Bus. Bureau, Inc.*
  No. 10-1468, 2011 WL 5085522 (S.D. Cal. Oct. 25, 2011).............21

*Newman v. Checkrite Cal., Inc.*
  912 F. Supp. 1354 (E.D. Cal. 1995) ................................................12

*O'Connor v. Boeing N. Am., Inc.*
  311 F.3d 1139 (9th Cir. 2002) .........................................................13

*Poulin v. The Thomas Agency*
  760 F. Supp. 2d 151 (D. Me. 2011) .................................................18

*Reichert v. Nat'l Credit Sys., Inc.*
  531 F.3d 1002 (9th Cir. 2008) ...........................................................9

*Safeco Ins. Co. of Am. v. Burr*
  551 U.S. 47 (2007)...........................................................................11

*Saunders v. Branch Banking & Trust Co. of Virgina*
  526 F.3d 142 (4th Cir. 2008) ...........................................25, 26, 31, 34

*Sepulvado v. CSC Credit Servs., Inc.*
  158 F.3d 890 (5th Cir. 1998) ...........................................................24

*Shultz v. Dep't of Army*
  886 F.2d 1157 (9th Cir. 1989) .....................................................2, 13

*Slanina v. United Recovery Sys., LP*
 No. 11-1391, 2011 WL 5008367 (M.D. Pa. Oct. 20, 2011) ...............................18

*Smith v. National Credit Systems, Inc.*
 807 F. Supp. 2d 836 (D. Ariz. 2011) ...........................................................15, 16

*Staub v. Proctor Hosp.*
 131 S. Ct. 1186 (2011) ....................................................................................11

*Time Warner Entm't-Advance/Newhouse P'ship v. Steadfast Orchard Park, L.P.*
 No. 07-473, 2008 WL 4350054 (C.D. Cal. Sept. 23, 2008) ..............................27

*TRW Inc. v. Andrews*
 534 U.S. 19 (2001) ..........................................................................................11

*United States v. R. Enters., Inc.*
 498 U.S. 292 (1991) .........................................................................................13

*VP Racing Fuels, Inc. v. General Petroleum Corp.*
 673 F.Supp.2d 1073 (E.D. Cal. 2009) ............................................................29

*Wang v. Asset Acceptance, LLC*
 681 F. Supp. 2d 1143 (N.D. Cal 2010) .....................................................passim

*Wilhelm v. Credico, Inc.*
 519 F.3d 416 (8th Cir. 2008) ....................................................................17, 20

*Wood v. Carpenter*
 101 U.S. 135 (1879) .........................................................................................13

*Wyeth v. Levine*
 555 U.S. 555 (2009) ............................................................................29, 30, 31

**CALIFORNIA CASES**

*Cal. ARCO Distributors, Inc. v. Atlantic Richfield Co.*
 158 Cal.App.3d 349 (1984) .............................................................................32

*Cal. Teachers Assn. v. Governing Bd. Of Rialto*
 14 Cal.4th 627 (1997) ......................................................................................32

*California v. Altus Fin., S.A.*
36 Cal.4th 1284 (2005) ......................................................................32

*Castillo v. Toll Bros., Inc.*
197 Cal.App.4th 1172 (2011) ...........................................2, 13, 26, 27

*Gattuso v. Harte-Hanks Shoppers, Inc.*
42 Cal.4th 554 (2007) ...................................................................32, 33

*John B. v. Superior Court*
38 Cal.4th 1177 (2006) ........................................................................2

*Olson v. Six Rivers Nat. Bank*
111 Cal.App.4th 1 (2003) ..................................................................24

*People v. Henderson*
115 Cal.App.4th 922 (2004) ..............................................................32

*Santa Clara Cty. Local Transp. Auth. v. Guardino*
11 Cal.4th 220 (1995) ........................................................................33

*Schmidlin v. City of Palo Alto*
157 Cal.App.4th 728 (2007) ..............................................................33

## FEDERAL STATUTES

15 U.S.C. § 1681s-2(a) ...............................................................25, 26, 34

15 U.S.C. § 1681s-2(a)(3)............................................................24, 25, 34

15 U.S.C. § 1681s-2(b) ...........................................................24, 25, 26, 34

15 U.S.C. § 1681s-2(b)(1)....................................................................24

15 U.S.C. § 1681t(b)(1)(F) ...........................................................passim

15 U.S.C. § 1692e ................................................................................19

15 U.S.C. § 1692e(8) .....................................................................passim

15 U.S.C. § 1692g.................................................................10, 18, 19

15 U.S.C. § 1692g(b) ...........................................................3, 18, 19

38 U.S.C. § 4311(a) ................................................................11

Fair Credit Reporting Act ................................................passim

Fair Debt Collection Practices Act ..................................passim

**CALIFORNIA STATUTES**

Cal. Civ. Code § 19................................................12, 13, 27

Cal. Civ. Code § 1785.1 ...................................................32

Cal. Civ. Code § 1785.25 .......................................27, 28, 29

Cal. Civ. Code § 1785.25(a) ...........................................passim

Cal. Civ. Code § 1785.25(c) ...........................................passim

Cal. Civ. Code § 1785.25(f) ...............................................2, 27

**OTHER AUTHORITIES**

53 Fed. Reg. 50,097, 50,101 (Dec. 13, 1988) .........................14

53 Fed. Reg 50097, 50106 (Dec. 13, 1992) .........................20

Fed. R. App. P. 32(a)(5) ........................................................1

Fed. R. App. P. 32(a)(6) ........................................................1

Fed. R. App. P. 32(a)(7)(B)(iii) .............................................1

Fed. R. Civ. P. 36 ................................................................8

Fed. R. Civ. P. 36(a)(4) ........................................................9

Fed. R. Civ. P. 56................................................................2

Ninth Circuit Rule 28-2.7 ...................................................3

Restatement (Second) of Agency § 1 (1958).........................12

Restatement (Second) of Torts § 12(2) (1965) ........................................................12

Restatement (Second) of Torts § 12 cmt. (1965)................................................2, 13

## I.    INTRODUCTION

AT&T Communications of California, Inc. ("AT&T") sought to collect the

unpaid balance on a telephone service account from Plaintiff-Appellant Harold

Holmes ("Holmes"), and assigned the account to a series of outside collection

agencies ("OCAs"), ending with Defendant-Appellee NCO Financial Systems, Inc.

("NCO"). One of NCO's predecessors recorded that Holmes disputed the account

in OASIS (the database AT&T uses to coordinate with its OCAs). Without ever

attempting to look at this record, NCO reported the account to credit reporting

agencies ("CRAs") without reporting Holmes's dispute.

Holmes alleged claims against NCO under the federal Fair Debt Collection

Practices Act ("FDCPA"), which prohibits a debt collector from

> [c]ommunicating . . . to any person credit information which . . .
> should be known to be false, including the failure to communicate that
> a disputed debt is disputed,

15 U.S.C. § 1692e(8), and under California's Consumer Credit Reporting Agencies

Act ("CCRAA"), which prohibits any person from

> furnish[ing] information on a specific transaction or experience to any
> consumer credit reporting agency if the person knows or should know
> the information is incomplete or inaccurate,

Cal. Civ. Code § 1785.25(a). By creating liability based on what a defendant

"should know," these statutes require a defendant to make a reasonable inquiry

1

with respect to the information it reports. "The statutory term 'should have known' imparts a test of reasonableness." *Shultz v. Dep't of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989). *See also Castillo v. Toll Bros., Inc.*, 197 Cal.App.4th 1172, 1196 n. 13, 1197 (2011) (California Legislature "invoke[es] the doctrine of constructive knowledge" by using "the term 'should know,'" and constructive "knowledge that one using reasonable care or diligence should have"); Restatement (Second) of Torts § 12 cmt. (1965) (term "should know" indicates "a duty . . . to use reasonable diligence to ascertain the existence or non-existence of the fact in question").[1]

Summary judgment is usually inappropriate when liability hinges on a standard of "reasonableness":

> [S]ummary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the "reasonable man" standard is thought ordinarily to preclude summary judgment. . . . [R]easonableness is appropriate for determination on a motion for summary judgment when only one conclusion about the conduct's reasonableness is possible.

*In re Software Toolworks Inc.*, 50 F.3d 615, 622 (9th Cir. 1994).

Given *In re Software Toolworks*, the trial court erred by entering summary judgment against Holmes. The record below can be compared to a creditor who shows a debt collector a door marked "Consumer Dispute Records" before handing the debt collector a list of accounts to collect. ***If the debt collector never bothers***

---

[1]  California law is in accord, quoting *John B. v. Superior Court*, 38 Cal.4th 1177, 1190 (2006) (internal citations omitted)).

***trying to open the door to review the records inside, it is wholly irrelevant***

***whether or not the door was locked.*** The debt collector violates the law if it does

not review the records behind the door before reporting disputed accounts to the

CRAs, even if the debt collector has to get a key from the creditor to open the door.

The analysis in this case is the same.

NCO devotes most of its opposition to new legal arguments. (*Cf.* Appellee

Br. 10-32 *with* ER14-21; ER180-95.) NCO's interpretation of the phrases "should

be known" and "should know" would render this language superfluous: the

established common law meaning of this language imposes a duty of reasonable

inquiry. NCO primarily relies on cases dealing with FDCPA section 1692g(b),

which does not contain the relevant language in section 1692e(8). Even NCO's

section 1692e(8) cases do not detract from the common law meaning of the

relevant statutory language either.

Likewise, it is contrary to basic preemption jurisprudence to read the Fair

Credit Reporting Act ("FCRA") as *implicitly* restricting the ordinary meaning of

the language CCRAA section 1785.25(a) when it expressly saved section

1785.25(a) from preemption. Pursuant to Circuit Rule 28-2.7, Holmes has prepared

a statutory addendum which includes the additional relevant statutes cited in

NCO's brief.

## II.  THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S RULING

The crux of this appeal is heavily dependent on the details of the OASIS system. The trial court's primary error was failing to address the fact that NCO never used the "Business Type" buttons in OASIS to access its precedessors' dispute records. NCO's arguments predictably distract from the role of the Business Type buttons, but Holmes's claims cannot be properly adjudicated without addressing the fact that NCO was not using them. To help restate the record as concisely as possible, Holmes reproduces a screenshot of the OASIS interface from the AT&T manual below:



The "Business Type" buttons are labeled with a "7" and are in the top right corner of the screenshot above, immediately below the date and time. OCAs use the Business Type buttons to display information recorded in OASIS by predecessor OCAs. (ER 65:26-66:14; ER69:11-14; ER94; ER129-30.) In particular, the Dispute Tabs store information related to consumer disputes. (ER66:14-19; ER95. Cf. ER67:7-20; ER114.) AT&T's manual clearly indicated that (1) predecessor OCAs recorded dispute records in their Dispute Tabs; and that (2) OCAs needed to use the Business Type buttons to review such predecessor records. (ER 65:26-66:19; ER 94-108.) OCAs *needed* to use the Business Type buttons to review their predecessors OCA's Dispute Tabs if it wanted to determine whether an account had been disputed. **The single most important fact in the record below is that** *there is absolutely no evidence that NCO ever tried to use the Business Type buttons to determine whether accounts had been disputed before Holmes filed his lawsuit.* (ER68:12-69:2, ER69:24-28; ER70:8-19; ER122; ER130:14-131:4.) The trial court erred because it did not address this fact.

### A. A Reasonable Debt Collector Would Not Have Reported AT&T's Account Before It Had Access to and Reviewed Its Predecessors' Dispute Tabs

NCO argues repetitiously that it did not have access to its predecessors' Dispute Tabs. (Appellee Br. 4-7, 33-40.) Because NCO never tried to review these records in the first place, its lack of access was irrelevant. The analogy to a locked

door marked "Consumer Dispute Records" holds true: a reasonable debt collector holds off reporting debts until it secured a key to the door – or access to the relevant records in OASIS. NCO violated the FDCPA because it never tried to access its predecessors' Dispute Tabs from the outset; if NCO had done so it would have discovered and fixed the access issue, and would not reported the Holmes account as undisputed. The record shows that (1) NCO was on notice that it needed to use the Business Type buttons to determine an account had been disputed; (2) NCO did not do so before Holmes's lawsuit; but that (3) NCO discovered and fixed the access issue within days after it first tried to use the Business Type buttons.

The record is very clear that NCO would have immediately learned of the access restrictions and could have resolved them quickly and easily *if it had been checking its precedessor OCAs' Dispute Tabs from the start*. OASIS's administrator (HOV) corrected the restrictions on NCO's access to OASIS within days after the restrictions were brought to HOV's attention. (ER69:14-21: ER130.) HOV also stated it would have restored NCO's access earlier if it had been asked. (ER69:3-9; ER125.) Moreover, NCO itself apparently caused the restrictions on its access to OASIS by improperly coding the relevant accounts. (Appellant Br. 28-29 (citing ER 69:14-21; ER130, ER227:2-10; ER245.))

NCO addresses the crux of this appeal – its failure to access predecessors' dispute records through the "Business Type" buttons – only briefly. As NCO puts it, it "looked in the wrong place." (Appellee Br. 37.) Contrary to NCO's assertion, there is plenty of "support in the record" for the conclusion that NCO *was* looking in the wrong place – or, more accurately, was not looking for consumer disputes *at all*. (*Cf. id. with* ER66:8-19, ER67:7-20;  ER69:11-14, ER94-95, ER110-17, ER129-30.) OASIS displayed the Business Type buttons to NCO all along; NCO simply chose never to use those buttons. (ER70:5-7; ER70:8-19; ER122; ER130.) Conversely, Holmes does not assert that "if NCO only looked in the right place, it could have seen the dispute." (Appellee Br. 37.) If NCO had been looking in the right place, ***it would have discovered and fixed the restrictions on its access to OASIS*** and ***then*** could have reviewed the record of Holmes's dispute.

## B.    The Fact that NCO's *Own* Dispute Tab Was Empty Is Irrelevant

NCO repeats its argument that its own Dispute Tab for the Holmes account "appeared empty." (Appellee Br. 34.) All this means is that NCO was looking at its *own* Dispute Tab, and did not use the Business Type buttons to review its *predecessors'* Dispute Tabs. (ER 65:26-66:14; ER69:11-14; ER94; ER129-30. *Cf.* ER67:7-20; ER110-17.) The fact that NCO's own Dispute Tab was empty is

7

irrelevant: NCO had notice that it needed to use the Business Type buttons to review its predecessors' Dispute Tabs, but failed to do so.

### C.    The OASIS Manual Put NCO on Notice That It Needed to Review Its Predecessors' Dispute Tabs

NCO's bald assertion that there is "simply no evidence to support the claim that NCO should have known that it was not being given access to the whole picture in Oasis" is false. (Appellee Br. 39.) The OASIS manual put NCO on notice that it needed to review its predecessors' Dispute Tabs to determine whether an account had been disputed. (ER 65:26-66:19; ER 94-108.)

On appeal, NCO now argues that "the Oasis user manual . . . has a release date of October 2010 – eight months after NCO credit reported Holmes's account." (Appellee Br. 36.) The implication that NCO did not have an OASIS manual when it reported the Holmes account in February 2010 is surprisingly disingenuous and contrary to NCO's representations in the trial court. (*See* ER64:24-65:2, ER75.) NCO argued that "the Oasis manual provided to [it] indicated that it was given access to the dispute tab." (ER6:27-28.) In response to one of Holmes's requests for admission, NCO admitted that it "**received the document titled 'AT&T OASIS – OCA Manual' prior to February 1, 2010**." (ER 70:20-22; ER136.) NCO cannot now assert that this admission was untrue. "Evidence inconsistent with a Rule 36 admission is properly excluded." *999 Corp. v. C.I.T. Corp.*, 776

8

F.2d 866, 869-70 (9th Cir. 1985) (citations omitted). Moreover, NCO had an obligation to inform Holmes if it admitted to receiving a *prior version* of the OASIS manual. *Cf*. Fed. R. Civ. P. 36(a)(4) ("when good faith requires that a party qualify an answer . . . the answer must specify the part admitted and qualify or deny the rest"). Even if NCO had received a prior version of the OASIS manual, NCO does not provide any reason to believe that it did not have the relevant information about the Business Type buttons and Dispute Tabs. To the extent NCO relies on the OASIS manual's "Release Date," given NCO's discovery responses, it presents a factual issue that should be determined by a trial court. The "Release Date" is not a basis for affirming summary judgment.

### D.    The Record Does Not Support NCO's Argument that It Had No Reason to Believe AT&T Did Not Assign NCO Disputed Accounts

NCO has two arguments to support its assertion that it had no reason (outside of OASIS) to believe that AT&T assigned it disputed accounts. (Appellee Br. 6, 35, 39-40.) First, it relies on its vice-president's declaration that NCO's "experience" was that AT&T assigned it "very few" disputed accounts. (*Id*. at 35, 40 (citing ER 228:1-4.)) Of course, this effectively concedes NCO should have been looking out for disputed accounts; "very few" is altogether different from "none at all." In any event, NCO's past experience with AT&T is not a "substitute for the maintenance of adequate procedures to avoid future" violations. *Reichert v.*

*Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008) ("fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable").Ultimately, NCO's perception that very few of AT&T's accounts were disputed is simply evidence of its own laxity in looking for disputes. AT&T assigned NCO at least 5,510 disputed accounts, and NCO improperly reported 1,375 of those disputed accounts. (ER23:10-16; ER68:1-12; ER120.)

## III.   NCO'S NEW ARGUMENTS ARE WRONG ON THE MERITS

NCO makes two new arguments on appeal: (1) that debt collectors have no "duty to reasonably investigate . . . for a possible dispute" under the FDCPA or CCRAA; and (2) that the FCRA preempts Holmes's CCRAA claim, (Appellee Br. 10-32.) These arguments are substantively wrong as wellas procedurally improper.

### A.    Common Law Principles Control the Meaning of "Should Be Known" in the FDCPA

FDCPA section 1692e(8) and CCRAA section 1785.25(a) extend liability based on what defendants "should know." NCO mainly relies on inapplicable case law (particularly under 15 U.S.C. § 1692g) to support its contention that these statutes do not impose any affirmative duty on NCO. (Appellee Br. 11-19.) The common law meaning of the phrases "should be known" or "should know" is clear; they necessarily imply a duty to investigate. Indeed, the "should know" language

would be superfluous if the FDCPA and the CCRAA did not impute some degree of knowledge to NCO beyond actual knowledge. *Cf. TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("cardinal principle of statutory construction" that statutes should be construed so that "no clause, sentence, or word shall be superfluous, void, or insignificant"); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006) (in construing FDCPA, Court is "obliged to give effect, if possible, to every word Congress used") (citation omitted).

The FDCPA does not define the phrase "should be known." When statutory terms are left undefined, it

> often  reflects an expectation that courts will look to the common law to fill gaps in statutory text, *particularly when an undefined term has a settled meaning at common law*.

*Clackamas Gastroenterology Associates, P. C. v. Wells*, 538 U.S. 440, 447 (2003) (emphasis added). Courts have repeatedly used common law tort principles to construe a broad variety of statutory claims: "we start from the premise that when Congress creates a federal tort it adopts the background of general tort law." *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1191 (2011) (applying intentional tort principles to 38 U.S.C. § 4311(a), citing *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 613-15 (2009) (applying Restatements on contribution and joint and several liability to apportioning CERCLA liability); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007) (applying common law usage of "reckless" to FCRA's

11

definition of "willful" violation; "the general rule [is] that a common law term in a statute comes with a common law meaning")).

This rule applies generally; courts use common law principles to interpret the FDCPA as well. This Court has held that "general principles of agency . . . form the basis of vicarious liability under the FDCPA." *Clark*, 460 F.3d at 1173 (relying on Restatement (Second) of Agency § 1 (1958); *Newman v. Checkrite Cal., Inc.*, 912 F. Supp. 1354, 1370 (E.D. Cal. 1995)).

Similarly, the meaning of the phrase "should be known" is found in the common law defining constructive knowledge.

### B.   Under the Common Law, the Phrase "Should Know" Implies a Duty to Perform a Reasonable Investigation

NCO's argument that "debt collector[s] ha[ve] no duty of independent investigation" under the FDCPA or CCRAA is contrary to the established common law meaning of the phrase "should know." (Appellee Br. 12.)

> The words "should know" are used . . . to denote the fact that a person of reasonable prudence and intelligence or of the superior intelligence of the actor *would ascertain the fact in question in the performance of his duty*[.]

Restatement (Second) of Torts § 12(2) (1965) (emphasis added). California statute expressly incorporates the same principle. *See* Cal. Civ. Code § 19.

### C.   Absence of a Duty to Investigate Would Tend to Frustrate the Statutory Purposes Behind the FDCPA and CCRAA

The phrases "should be known" and "should know" also invoke a duty to act *reasonably*.[2] A duty of reasonable care is flexible and responds to circumstances of each case; "what is reasonable depends on the context." *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991). This flexibility serves a critical statutory goal, prompting defendants to investigate *with whatever means are at their disposal*. "This concept of constructive notice is captured by the maxim that 'the means of knowledge are the same thing in effect as knowledge itself.'" *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002) (quoting *Wood v. Carpenter*, 101 U.S. 135, 143 (1879)). *See also* Cal. Civ. Code § 19 (constructive knowledge imputed where person "might have learned" of relevant facts "by prosecuting . . . inquiry"). In short, a duty of reasonable care ensures the FDCPA and CCRAA regulate not only defendants who have actual knowledge, but also those who could have reasonably obtained the knowledge. Without a duty of care, the debt collector can ignore the contents of a locked box labeled "Consumer Disputes" with impunity.

---

[2]   *See Shultz*, 886 F.2d at 1160 ("'should have known' imparts a test of reasonableness"); Restatement (Second) of Torts § 12 cmt. (1965) ( "should know" implies duty of "reasonable diligence"); *Castillo*, 197 Cal.App.4th at 1197 (constructive knowledge imputes "reasonable care or diligence").

NCO's blanket assertion that the FDCPA does not create a duty to affirmatively act is inconsistent with the Court's recognition that the FDCPA "regulates the conduct of debt collectors, *imposing affirmative obligations* and broadly prohibiting abusive practices." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (emphasis added). "The purpose of the FDCPA is to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007). An affirmative duty to investigate under section 1692e(8) is "more in harmony with the [FDCPA's] remedial" purpose, "which requires us to interpret [the FDCPA] liberally." *Clark*, 460 F.3d at 1176.

Likewise, an affirmative duty to investigate prevents debt collectors from undermining the FDCPA's statutory goals through deliberate ignorance. Without constructive knowledge liability, unscrupulous debt collectors could easily evade section 1692e(8). Congress intended "to limit the opportunities for debt collectors to evade the under-lying legislative intention" when it enacted the FDCPA. *Clark*, 460 F.3d at 1178 (quoting 53 Fed. Reg. 50,097, 50,101 (Dec. 13, 1988)). Consequently, the Court has repeatedly rejected interpretations that would "undermine the consumer protection goals of the [FDCPA.]" *Gonzales*, 660 F.3d at

1063 (citation omitted).[3] The Court cannot permit debt collectors to evade section 1692e(8) through intentional (or careless) ignorance.

### D.    NCO's Investigation Was Not Reasonable

NCO's duties under FDCPA section 1692e(8) and CCRAA section 1785.25(a) were limited to a *reasonable* inquiry. Certainly, debt collectors are entitled to *reasonably* rely on creditors' records: "[l]ogically, if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors." *Clark*, 460 F.3d at 1177. Here, however, Holmes was not concerned with NCO's *reliance* on AT&T's records, but with NCO's *failure to review* AT&T's records in the first place. The OASIS manual put NCO on notice that its predecessor OCAs stored consumer disputes in OASIS, and that it needed to use Business Type buttons to access the relevant Dispute Tabs – but NCO never tried to access those records. Debt collectors are liable under the FDCPA where their "reliance on the creditor's representation is unreasonable" or their credit reporting is inconsistent with the creditor's records. *Id*. Holmes's case most closely resembles *Smith v. National Credit Systems, Inc.*, 807 F. Supp. 2d 836 (D. Ariz. 2011) which held a debt collector liable under section 1692e(8) as a matter of law,

---

[3]    *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1615 (2010) (rejecting mistake-of-law defense in part because it might provide debt collectors "affirmative incentive not to seek an advisory opinion to resolve ambiguity in the law").

because it ignored "collection notes before reporting debts to the credit bureaus[,] even though such a review would have avoided the erroneous report in this case." *Id*. at 842. The analysis is the same here: NCO could have and should have obtained access to the predecessor Dispute Tabs in OASIS. NCO violated the law by failing to do so before it reported the Holmes account.

### E. NCO's Authorities Do Not Construe the Phrase "Should Be Known" in FDCPA Section 1692e(8)

None of NCO's authorities directly address the scope of constructive knowledge imputed by the phrase "should be known" under FDCPA section 1692e(8). Instead, they mostly address situations where actual knowledge was not disputed.[4] Because none of these cases had any occasion to interpret the phrase "should be known" in section 1692e(8), none of them can be read to support restricting the scope of imputed knowledge under section 1692e(8). Only *Gostony v. Diem Corp.*, 320 F. Supp. 2d 932 (D. Ariz. 2003) even touches on the issue at hand. In *Gostony*, the plaintiff's father sent a letter disputing the alleged debt at issue. *Id*. at 941-42. *Gostony* denied summary judgment for the plaintiff on her

---

[4]   *See Smith*, 807 F. Supp. 2d at 841-42 (oral dispute directly from debtor); *Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155 (D. Or. 2010) (creditor faxed accurate credit information to debt collector; debt collector "furnished different and false information" to CRA); *Gilmore v. Account Mgmt., Inc.*, No. 08-1388, 2009 WL 2848278, *7 (N.D.Ga., Apr. 27, 2009) (debtor disputed via certified mail, defendant signed certified mail receipt).

section 1692e(8) claim:

> Questions of fact remain regarding whether Defendants were aware of who [plaintiff's father] was and *whether they could have known* he was authorized to act on Plaintiff's behalf, if in fact he was.

*Id*. at 942 (emphasis added). In other words, *Gostony* suggests a debt collector is liable under section 1692e(8) if it *could have known* that the debt was disputed by the plaintiff. This is consistent with the common law interpretation of "should be known" which Holmes describes above.

NCO cites *Brady v. Credit Recovery Co.*, 160 F.3d 64 (1st Cir. 1998) for the proposition that liability under section 1692e(8) "depends solely on the debt collector's *knowledge that the debt is disputed*, regardless of how or when that knowledge is acquired." (Appellee Br. 19) (emphasis in original). *Brady*'s actual holding is that debts can be disputed under FDCPA section 1692e(8) orally or in writing: *Brady* does not have anything to say about constructive knowledge under section 1692e(8). *Brady*, 160 F.3d at 67. Likewise, NCO contends that *Wilhelm v. Credico, Inc.*, 519 F.3d 416 (8th Cir. 2008) stands for the proposition that "*knowledge* of the dispute is essential." (Appellee Br. 20.) In fact, *Wilheim* stands for the proposition that section 1692e(8) does not require that a debt collector report disputed debts to the CRAs, but if the debt collector does choose to report a debt, the debt must be reported as disputed. *See Wilhelm*, 519 F.3d at 418. None of the foregoing cases support NCO's suggestion that only actual knowledge triggers

17

section 1692e(8) liability; NCO urges the Court to interpret section 1692e(8) in a

manner that effectively reads the phrase "should be known" (and the corresponding

application of constructive knowledge) out of the FDCPA. *Cf. Clark*, 460 F.3d at

1175 (Court rejects interpretation of FDCPA that renders portions of statutory

language meaningless or superfluous).

> **1.     NCO's Cases Construing Verification Requirement Under FDCPA Section 1692g(b) Are Inapposite**

NCO primarily relies on cases concerning the verification of debts under 15

USC § 1692g. (*See* Appellee Br. 12-16.)[5]

> If the consumer notifies the debt collector in writing within [30 days after initial contact by the debt collector] that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). Section 1692g(b) serves a different purpose than section

1692e(8) and – most critically – ***does not contain the language "should be***

***known" which is at issue in this appeal***. The result under section 1692e(8) may be

very different than the result for a section 1692g(b) claim. *Cf. Fox v. Citicorp*

---

[5]     *See Clark*, 460 F.3d at 1173-74 (concerning section 1692g claim). *See also Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999) (same); *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991) (same); *Poulin v. The Thomas Agency*, 760 F. Supp. 2d 151, 159-61 (D. Me. 2011) (same); *Slanina v. United Recovery Sys., LP*, No. 11-1391, 2011 WL 5008367, *3 (M.D. Pa. Oct. 20, 2011); *Azar v. Hayter*, 874 F. Supp. 1314, 1317 (N.D. Fla. 1994).

*Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994) ("each section [of the FDCPA] specifies what kind of conduct supports FDCPA liability"). Hence, section 1692e(8) imposes a different standard of liability than section 1692g(b). *See Clark*, 460 F.3d at 1174-77 (summary judgment was proper on section 1692g(b) claim, ***but not on section 1692e claim***). The language from *Clark* which NCO quoted concerns section 1692g(b). (Appellee Br. 12.) *Clark* did indeed find that section 1692g(b) did not impose "any duty to investigate independently" the creditor's claims, ***but this did not end Clark's inquiry with respect to the defendant's liability under section 1692e***. *Id*. at 1174. Rather, *Clark* found that defendant's knowledge of the creditor's "serious bookkeeping difficulties and billing problems" foreclosed summary judgment on the section 1692e claim. *Id*. at 1176-77 ("debt collector whose reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that is different from the creditor's report" is liable under the FDCPA). Even though *Clark* considered other section 1692g(b) cases cited by NCO, it did not apply their reasoning to the plaintiff's section 1692e claims. *Id*. at 1173-77 (applying *Chaudhry* and *Azar* to section 1692g claim, but not with respect to section 1692e claim). It follows that these cases do not apply to Holmes's section 1692e(8) claim either.

### 2. The FTC Does Not Have Authority to Write the Phrase "Should Be Known" Out of Section 1692e(8)

NCO cites commentary by the Federal Trade Commission that "*knowledge of the dispute is essential*," and that "*constructive knowledge is not even referenced in the commentary.*" (Appellee Br. 20-21 (citing FTC Staff Commentary, 53 Fed. Reg 50097, 50106 (Dec. 13, 1992)) (emphasis in original).) The FTC commentary did not concern the "should be known" language in section 1692e(8) (but rather the timing of when a report will violate the FDCPA). *See Wilhelm*, 519 F.3d at 418.

In any event, the Court cannot defer to the FTC commentary to the extent that NCO suggests that it eliminates constructive knowledge from section 1692e(8). Nothing in the FDCPA "indicat[es] that Congress intended to authorize the FTC to create . . . exception[s] from the [FDCPA which] fall . . . outside the range of reasonable interpretations of the [FDCPA's] express language." *Heintz v. Jenkins*, 514 U.S. 291, 298 (1995) (citing, e.g., *Fox*, 15 F.3d at 1513 ("declining to adopt the position in the FTC commentary because it conflicts with the plain language of the statute")). The Court should not interpret section 1692e(8) in a manner that renders the phrase "should be known" superfluous. *Clark*, 460 F.3d at 1175.

### 3. The FCRA Does Not Limit NCO's Duties Under the FDCPA

NCO argues that the FCRA should be read to limit NCO's duties under the FDCPA. (Appellee Br. 21-26.) These statutes may overlap at times, but nothing in the FCRA limits the meaning of the language in FDCPA section 1692e(8):

> [T]he FCRA does not provide that it is the exclusive remedy when a debt collector furnishes false information to a credit bureau. Even if a consumer cannot sue a furnisher of information under the FCRA, nothing forbids a consumer from suing a debt collector under the FDCPA.

*Daley*, 717 F. Supp. 2d at 1155 (emphasis added). *See also Moscona v. Cal. Bus. Bureau, Inc.*, No. 10-1468, 2011 WL 5085522, *4 (S.D. Cal. Oct. 25, 2011) (FCRA does not preempt FDCPA). NCO's duties under the FDCPA are simply different than its duties under the FCRA: section 1692e(8) generally "precludes the debt collector from communicating the debtor's credit information to others [including **but not limited to** CRAs] without including the fact that the debt is in dispute." *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

In any event, the Court has not construed the FCRA in a manner that supports NCO's suggestion that a furnisher's obligations begin and end with the notice of dispute received from a CRA. (*Cf.* Appellee Br. 23, 25-26.) Rather, an investigation is "unreasonable" if it fails to "look beyond the information contained" in a defendant's "internal computer system" and to "consult underlying

documents." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009) (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)).

### F.  The FCRA Does Not Preempt Holmes's CCRAA Claim

Finally, NCO argues that the FCRA preempts Holmes's CCRAA claim, citing *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143 (N.D. Cal 2010), *motion for relief from judgment denied*, No. 09-4797, 2010 WL 4321565 (N.D. Cal. Nov. 1, 2010). (Appellee Br. 27-32.) It would have been better if this matter was not raised for the first time in an opposition brief on appeal, as there would have been a benefit from more developed arguments. Analysis of the interplay between CCRAA section 1785.25(a) and FCRA section 1681t(b)(1)(F) requires a close examination of the statutory language and careful consideration of applicable preemption jurisprudence.

Section III.F.1 explains that *Wang* does not apply to every aspect of Holmes's CCRAA claim – Holmes did not only allege NCO reported "incomplete" information by failing to note his dispute, but also "inaccurate" information because Holmes was not liable on the underlying account. Section III.F.5 explains that reading the FCRA to impliedly restricts the plain meaning of CCRAA section

1785.25(a)'s language violates basic rules about the limited scope of federal preemption.

### 1.     Any "Incomplete or Inaccurate" Credit Information Is Necessarily Disputed

Citing *Wang*, NCO argues that Holmes's claim must be preempted because it concerns reporting on a disputed debt. (Appellee Br. 28-30.) Holmes's section 1785.25(a) claim does not arise solely from NCO's failure to report his dispute but alleged that "NCO should have known that the information" it reported about Holmes was "incomplete or inaccurate" because Holmes was *substantively not liable for the account*. (ER272:21-24.) **Section 1785.25(a) applies to "incomplete or inaccurate" information:** ***in any section 1785.25(a) claim, the plaintiff must necessarily dispute the accuracy and completeness of the information at issue***. **If the FCRA preempts every section 1785.25(a) claim which disputes the accuracy and completeness of the information at issue, the FCRA would preempt all section 1785.25(a) claims.** This result cannot be reconciled with Congress's express decision to save section 1785.25(a) from preemption in 15 U.S.C. § 1681t(b)(1)(F). *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1172-73 (9th Cir. 2009). Even if *Wang* were correct, Holmes's section 1785.25(a) claim is not preempted because it does not rest solely on the fact that NCO failed to report his dispute.

## 2.  The Plain Meaning of "Incomplete or Inaccurate" Includes the Failure to Report a Dispute

*Gorman* found that the meaning of the phrase "incomplete or inaccurate" in FCRA section 1681s-2(b) can include a furnisher's failure to report a dispute. *See id*. at 1163 ("omission of the dispute was 'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect,'" quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)). CCRAA section 1785.25(a) uses exactly the same wording: it prohibits furnishing "incomplete or inaccurate" information to CRAs. *Cf.* Cal. Civ. Code § 1785.25(a) *with* 15 U.S.C. § 1681s-2(b)(1). Given the close relationship between the two laws, "judicial interpretation of the [FCRA] is persuasive authority and entitled to substantial weight when interpreting the [CCRAA]." *Olson v. Six Rivers Nat. Bank*, 111 Cal.App.4th 1, 12 (2003) (quoted by *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010)). "Since the CCRAA mirrors the FCRA, [a plaintiff] should be successful on the same claims under the identical provisions of the CCRAA." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1336 (9th Cir. 1995). The words "incomplete and inaccurate" have the same meaning in both statutes.

Like CCRAA section 1785.25(c), FCRA section 1681s-2(a)(3) (which is not privately enforceable) specifically prohibits reporting a debt without noting that the debt is disputed. However, courts recognize the omission of a consumer dispute is

24

actionable under section 1681s-2(b), notwithstanding the specific prohibition in section 1681s-2(a)(3). *See Saunders v. Branch Banking & Trust Co. of Virgina*, 526 F.3d 142, 149-50 (4th Cir. 2008) (rejecting furnisher's argument that the omission of a dispute only violated FCRA section 1681s-2(a)(3), and not section 1681s-2(b)); *Gorman*, 584 F.3d at 1163-64 (quoting *Saunders*, 526 F.3d at 149-50, finding its logic "persuasive"). The phrase "incomplete or inaccurate" in FCRA section 1681s-2(b) covers the omission of a dispute (despite the specific prohibition in section 1681s-2(a)(3)). It should have the same meaning in CCRAA section 1785.25(a) – notwithstanding the specific prohibition in section 1785.25(c).

      *Wang* held that *Gorman*'s interpretation of "incomplete and inaccurate" cannot be applied to section 1785.25(a) because of distinctions "in the wording and structure of the two statutes." (Appellee Br. 30-31 (citing *Wang*, 2010 WL 4321565, at *3)). NCO and *Wang* do not explain how these "distinctions" makes *Gorman*'s interpretation of the words "incomplete and inaccurate" any less applicable to the CCRAA. *Saunders* found that FCRA section 1681s-2(b) "does not set forth specific requirements as to what information must be reported, because these requirements have already been set forth in" section 1681s-2(a). *Saunders*, 526 F.3d at 149. Thus, information can be "incomplete and inaccurate" under section 1681s-2(b) because it violates section 1681s-2(a), even though

furnishers' duties under section 1681s-2(a) are in a separate subsection than section 1681s-2(b). As *Saunders* noted, the contrary result is absurd:

> No court has ever suggested that a furnisher can excuse its failure to identify an inaccuracy when reporting pursuant to § 1681s-2(b) by arguing that it should have already reported the information accurately under § 1681s-2(a).

*Id*. at 149-50 (cited by *Gorman*, 584 F.3d at 1164). The phrase "incomplete and inaccurate" in section 1681s-2(b) incorporates standards of conduct in section 1681s-2(a), even though section 1681s-2(a) is not privately enforceable. CCRAA section 1785.25(a) uses the same language and it should have the same meaning. *Gorman* held that the FCRA preempts the CCRAA only to the extent that the two laws conflict, and that the duties imposed under the CCRAA "are nearly identical to the FCRA's obligations [and] would not require furnishers to violate the FCRA to comply with state law." *Gorman*, 584 F.3d at 1173 n.35 (citations omitted).

### 3.    The Plain Meaning of the Words "Should Know" in Section 1785.25(a) Includes a Duty to Investigate

CCRAA section 1785.25(a) extends liability where a furnisher "knows or should know [its] information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). The phrase "should know" reflects a duty of reasonable investigation. The California Legislature "invoke[es] the doctrine of constructive knowledge" by using "the term 'should know.'" *Castillo*, 197 Cal.App.4th at 1196 n. 13. Constructive knowledge is defined as "knowledge that one using reasonable care

or diligence should have." *Id.* at 1197. California statute expressly defines constructive knowledge as the information that would be obtained from an active inquiry. *Cf.* Cal. Civ. Code § 19. *See also Time Warner Entm't-Advance/Newhouse P'ship v. Steadfast Orchard Park, L.P.*, No. 07-473, 2008 WL 4350054, *10 (C.D. Cal. Sept. 23, 2008) (applying California law, defendant "with actual knowledge sufficient to require inquiry obtains constructive knowledge of what a (reasonable) search would have discovered," citing, e.g., Cal. Civ. Code § 19).

The phrase "should know" imposed a duty on NCO to inquire with the proper OASIS records for disputes. NCO now argues that, by preempting section 1785.25(f), the FCRA also preempted any duty of inquiry under section 1785.25(a). (Appellee Br. 26, 32.) NCO's reasoning is incorrect for the same reason that *Wang* is incorrect: according to well-established preemption jurisprudence, the FCRA did not restrict the plain meaning of the language in subsection 1785.25(a) when it preempted the other subsections of CCRAA section 1785.25. The FCRA's preemption of CCRAA section 1785.25(f) is not a valid basis for reading constructive knowledge out of CCRAA section 1785.25(a).

### 4. The FCRA Did Not Impliedly Restrict the Plain Meaning of the Phrase "Incomplete or Inaccurate" in CCRAA Section 1785.25(a)

Although it recognized the intent of the California legislature to require furnishers to report disputes, *Wang* held that "it was the decision of Congress, not

27

the California legislature, to preempt section 1785.25(c)." *Id*. If Congress intended to restrict the plain meaning of "incomplete or inaccurate" to exclude omission of consumer disputes (contrary to *Gorman*), it would have done so explicitly and expressly. It did not.

There is affirmative evidence that Congress did not draft the FCRA to completely preempt the other subsections in CCRAA section 1785.25. FCRA preemption does not apply "with respect to" section 1785.25(a), rather than simply "to" section 1785.25(a). Cf. 15 U.S.C. § 1681t(b)(1)(F) with *Gorman*, 584 F.3d at 1173 n. 35.

> The most sensible understanding of this difference is that Congress intended for the exception [to preemption] to apply ***not only to the specific subsection mentioned in the statute, but also to California laws that operate "with respect to" that subsection*** . . . Where Congress saves a particular state law from preemption, it would be incoherent to hold that the state law is otherwise preempted because it was somehow "inconsistent" with an overarching congressional purpose.

*Id*. (emphasis added). To the extent that section 1785.25(c)'s prohibition against failure to note consumer disputes is necessary to reach the full extent of "incomplete or inaccurate" information prohibited under section 1785.25(a), *Gorman* recognizes that it was saved from preemption under the FCRA.

In contrast, both *Wang* and NCO err by assuming that the preemption provisions in 15 U.S.C. § 1681t(b)(1)(F) restrict the plain meaning of the language

28

in CCRAA subsection 1785.25(a). When considering implied or express

preemption, courts "start with the assumption that the historic police powers of the

States were not to be superseded by the Federal Act unless that was the clear and

manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)

(quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). *See also Altria

Group, Inc. v. Good*, 555 U.S. 70, 77 (2008).

> Thus, when the text of a pre-emption clause is susceptible of more
> than one plausible reading, courts ordinarily "accept the reading that
> disfavors pre-emption."

*Id*. (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)). *See also

VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F.Supp.2d 1073, 1079

(E.D. Cal. 2009) ("there is a strong presumption that state law claims are not to be

superseded unless that was the clear and manifest purpose of Congress"). Section

1681t(b)(1)(F) gives no indication, let alone a "clear and manifest" one, that

Congress had any intent to restrict the plain meaning of the language in subsection

1785.25(a).

The fact that 15 U.S.C. § 1681t(b)(1)(F) preempts *other parts* of section

1785.25 does not lessen the presumption against preempting subsection

1785.25(a). Even where Congress expressly intended "to pre-empt at least some

state law," the "analysis of the *scope* of the pre-emption statute" is still subject to

the "presumption" that "Congress does not cavalierly pre-empt state-law causes of

action." *Lohr*, 518 U.S. at 484-85. *Lohr* expressly rejected the contention that a

presumption against preemption applies "only to the question whether Congress

intended any pre-emption at all, as opposed to questions concerning the *scope* of

its intended invalidation of state law." *Id*. at 485 (emphasis in original). As a result,

"Congress's enactment of a provision defining the preemptive reach of a statute

implies that matters beyond that reach are not pre-empted." *Hunter v. Philip*

*Morris USA*, 582 F.3d 1039, 1047 (9th Cir.  2009). *See also Lockwood v. Conagra*

*Foods, Inc.*, 597 F.Supp.2d 1028, 1032 (N.D. Cal. 2009) ("an express definition of

the pre-emptive reach of a statute implies –  i.e., supports a reasonable inference-

that Congress did not intend to pre-empt other matters," quoting *Freightliner Corp.*

*v. Myrick*, 514 U.S. 280, 288 (1995)).

        Hence, *Wang* and NCO do not give sufficient weight to Congress's decision

to expressly save section 1785.25(a) from preemption:

> The case for federal pre-emption is particularly weak where Congress
> has indicated its awareness of the operation of state law in a field of
> federal interest, and has nonetheless decided to stand by both concepts
> and to tolerate whatever tension there is between them.

*Wyeth*, 555 U.S. at 575 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,

489 U.S. 141, 166-67 (1989)). If Congress intended 15 U.S.C. § 1681t(b)(1)(F) to

restrict the plain meaning of CCRAA subsection 1785.25(a), it could have done so.

*Cf. id*. at 574-75. Congress has not acted on its opportunities to explicitly restrict the scope of subsection 1785.25(a):

> [W]hen Congress later amended the FCRA essentially to match the California statute, it did not then remove the California exception, as it could have done. The decision to retain the exception for California Civil Code section 1785.25(a) thus suggests that Congress likely intended to preserve the remaining unique provisions of the California scheme . . .

*Gorman*, 584 F.3d at 1172 n. 34. Again, nothing in section 1681t(b)(1)(F) indicates any intent to restrict the plain meaning of the CCRAA's language in section 1785.25(a). Absent such an indication, *Altria*, *Lohr*, and *Bates* mandate that the FCRA does not restrict the meaning of the language in section 1785.25(a). Thus, the meaning of the phrase "incomplete or inaccurate" in section 1785.25(a) includes the failure to report a disputed debt (just as *Gorman* and *Saunders* found it did under the FCRA). Likewise, the phrase "should know" imparts constructive knowledge and a corresponding duty of inquiry.

### 5. The Holding in *Wang* Frustrates the Statutory Intent of Section 1785.25(a)

*Wang* held that CCRAA section 1785.25(a)'s prohibition on furnishing "incomplete or inaccurate" information could not cover the omission of a consumer's dispute because it would render section 1785.25(c) "superfluous and unnecessary," and thereby violate California's rules of statutory construction. *Wang*, 681 F. Supp. 2d at 1147-48. *Wang* fundamentally misapplied these rules.

It is contrary to California's rules of statutory interpretation to restrict the plain meaning of the phrase "incomplete or inaccurate" in section 1785.25(a), in order to "save" section 1785.25(c) from becoming meaningless – *when section 1785.25(c) was already preempted and has no effect*. The "fundamental task" of statutory construction under California law "is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." *California v. Altus Fin., S.A.*, 36 Cal.4th 1284, 1295 (2005).[6] The California Legislature's expressed intent in passing the CCRAA was to protect consumers, *cf.* Cal. Civ. Code § 1785.1, and it is fair to assume that the California Legislature would want the CCRAA to provide as much protection for consumers as the FCRA permits. California and federal statutes "should be accommodated and harmonized where possible so that preemption can be avoided." *Cal. ARCO Distributors, Inc. v. Atlantic Richfield Co.*, 158 Cal.App.3d 349, 359 (1984). As the "*most important canon of statutory construction* is that each statute must be interpreted to give effect to the Legislature's intent," it is legal err to use the rule against surplusage in a way that its only effect is to frustrate the statutory goal of protecting consumers. *People v.*

---

[6]  *See also Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 567 (2007) (goal of statutory construction "is to ascertain the intent of the enacting legislative body so that [the court] may adopt the construction that best effectuates the purpose of the law"); *Cal. Teachers Assn. v. Governing Bd. Of Rialto*, 14 Cal.4th 627, 632 (1997) ("intent of the Legislature" is "touchstone of statutory interpretation").

*Henderson*, 115 Cal.App.4th 922, 930 (2004) (emphasis added). The rule against surplusage "is not absolute," and it may be applied "only if it results in a **reasonable** reading of the legislation." *Santa Clara Cty. Local Transp. Auth. v. Guardino*, 11 Cal.4th 220, 234-35 (1995) (emphasis in original). *Wang* erred because it did not interpret section 1785.25(a) in a manner "that comports most closely with the apparent intent of the Legislature, **with a view toward promoting, rather than defeating, the general purpose of the statute** and avoiding an interpretation that would lead to absurd consequences." *Schmidlin v. City of Palo Alto*, 157 Cal.App.4th 728, 749 (2007).[7] It is absurd to restrict the plain meaning of the language in section 1785.25(a) in order to "give effect" to another subsection that is preempted and cannot have effect.

### 6.    CCRAA Section 1785.25(a) Does Not Impose a Different Prohibition Than FDCPA Section 1692e(8)

The specific language in the FCRA's preemption provision only extends to "requirement[s] or prohibition[s]" imposed under state law. 15 U.S.C. § 1681t(b)(1)(F). *Gorman* held that the FCRA does not preempt state laws if they are merely enforcement provisions and not "requirement[s] or prohibition[s]," i.e., "rule[s] of law that must be obeyed." *Gorman*, 584 F.3d at 1171 (quoting *Bates v.*

---

[7]    *See also Gattuso*, 42 Cal.4th at 567 (interpretation of California statutes should be "consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity").

*Dow Agrosciences LLC*, 544 U.S. 431, 445 (2005)). *Gorman* "distinguished the imposition of additional legal duties, which are preempted, and the provision of additional remedies or enforcement mechanisms that are not." *Bottoni v. Sallie Mae, Inc.*, No. 10-03602, 2011 WL 635272, *15 (N.D. Cal. Feb. 11, 2011) (followed by *El-Aheidab v. Citibank (South Dakota), N.A.*, No. 11-5359, 2012 WL 506473, *6 (N.D. Cal. Feb. 15, 2012) ("[s]tatutes which impose legal duties are preempted; statutes which merely provide procedural remedies are not")).

The words "incomplete and inaccurate" encompass violations of other statutory standards outside of section 1681s-2(b). *Saunders*, 526 F.3d at 149 (requirements for FCRA section 1681s-2(b) "already been set forth in" section 1681s-2(a)). Anyone reviewing an NCO credit report would expect NCO to note consumer disputes because NCO is subject to FDCPA section 1692e(8). The failure to note Holmes's dispute renders NCO's report "incomplete and inaccurate," given NCO's obligations under FCDPA section 1692e(8) and FCRA section 1681s-2(a)(3). If Holmes's CCRAA claim alleges NCO's information was "incomplete and inaccurate" *because its reporting violated FDCPA section 1692e(8)*, the CCRAA does not impose a different "requirement or prohibition" than one already found in federal law. Hence, under *Gorman*, Holmes's CCRAA claim is not subject to preemption.

34

## IV.     CONCLUSION

Holmes respectfully asks the Court to reverse the summary judgment entered on his claims by the district court, and to remand this case to a different judge.

Dated: June 7, 2012        By: _____ s/Ethan Prestion _____

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Suite 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

This brief contains 7,869 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2007 and in a proportionally spaced typeface of 14 points or more.

Dated: June 7, 2012    By: _____ s/Ethan Preston _____
David C. Parisi (162248)
Suzanne Havens Beckman (188814)
Azita Moradmand (267271)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Suite 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Harold Hoolmes v. NCO Financial Systems, Inc.*

Case No. 11-56969

**Statutory Addendum**

| **Document** | **Page** |
|---|---|
| 15 U.S.C. § 1692e(8) | App. 1 |
| Cal. Civil Code § 1785.25(a), (c), and (f) | App. 2 |
| 15 U.S.C. § 1681t(b)(1)(F) | App. 4 |
| Fed. R. Civ. P. 56 | App. 5 |

15 U.S.C. § 1692e.

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(8)    Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

California Civil Code § 1785.25.

(a)    A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate.

. . .

(c)    So long as the completeness or accuracy of any information on a specific transaction or experience furnished by any person to a consumer credit reporting agency is subject to a continuing dispute between the affected consumer and that person, the person may not furnish the information to any consumer credit reporting agency without also including a notice that the information is disputed by the consumer.

. . .

(f)    Upon receiving notice of a dispute noticed pursuant to subdivision (a) of Section 1785.16 with regard to the completeness or accuracy of any information provided to a consumer credit reporting agency, the person that provided the information shall (1) complete an investigation with respect to the disputed information and report to the consumer credit reporting agency the results of that investigation before the end of the 30-business-day period beginning on the date the consumer credit reporting agency receives the notice of dispute from the consumer in accordance with subdivision (a) of

Section 1785.16 and (2) review relevant information submitted to it.

15 U.S.C. § 1681t

(a)    In general

Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

(b)    General exceptions

No requirement or prohibition may be imposed under the laws of any State—

    (1)    with respect to any subject matter regulated under—

        (F)    section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply—

        . . .

        (ii)    with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996)

App. 4

Federal Rule of Civil Procedure 56.

(a)     MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY

        JUDGMENT

        A party may move for summary judgment, identifying each claim or

        defense—or the part of each claim or defense—on which summary

        judgment is sought. The court shall grant summary judgment if the movant

        shows that there is no genuine dispute as to any material fact and the movant

        is entitled to judgment as a matter of law. The court should state on the

        record the reasons for granting or denying the motion.

. . .

(c)     PROCEDURES.

            (1)     Supporting Factual Positions. A party asserting that a fact

                    cannot be or is genuinely disputed must support the assertion

                    by:

                        (A)     citing to particular parts of materials in the record,

                                including depositions, documents, electronically

                                stored information, affidavits or declarations,

                                stipulations (including those made for purposes of

                                the motion only), admissions, interrogatory

                                answers, or other materials; or

(B)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2)    Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3)    Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4)    Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d)    WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)    defer considering the motion or deny it;

(2)    allow time to obtain affidavits or declarations or to take

discovery; or

(3)     issue any other appropriate order.

(e)     FAILING TO PROPERLY SUPPORT OR ADDRESS A FACT. If a party

fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c), the court may:

(1)     give an opportunity to properly support or address the fact;

(2)     consider the fact undisputed for purposes of the motion;

(3)     grant summary judgment if the motion and supporting

materials—including the facts considered undisputed—show

that the movant is entitled to it; or

(4)     issue any other appropriate order.

. . .

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to 28 U.S.C. § 1746, I hereby certify that I electronically filed the foregoing **Appellant's Reply Brief** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on the date below. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 7, 2012       By: _____ s/Azita Moradmand _____
                          David C. Parisi (162248)
                          Suzanne Havens Beckman (188814)
                          Azita Moradmand (267271)
                          PARISI & HAVENS LLP
                          15233 Valleyheart Drive
                          Sherman Oaks, California 91403
                          (818) 990-1299 (telephone)
                          (818) 501-7852 (facsimile)
                          dcparisi@parisihavens.com
                          shavens@parisihavens.com